

**FILED**

Mar 30 2017, 6:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of D.P. (Minor Child), | March 30, 2017 |
| and, | Court of Appeals Case No. 49A02-1610-JC-2367 |
| M.P. (Father), | Appeal from the Marion Superior Court |
| Appellant-Respondent, | The Honorable Marilyn A. Moores, Judge |
| v. | The Honorable Diana Burleson, Magistrate |
| The Indiana Department of Child Services, | Trial Court Cause No. 49D09-1603-JC-1071 |
| *Appellee-Petitioner.* | |

**Barnes, Judge.**

# Case Summary

M.P. ("Father") appeals the trial court's finding that his child, D.P., is a child in need of services ("CHINS"). We reverse.

# Issue

The restated issue before us is whether there is sufficient evidence to support the determination that D.P. is a CHINS.

# Facts

On March 28, 2016, the Marion County Office of the Department of Child Services ("DCS") filed a petition alleging that D.P., who was born in 2007, was a CHINS. The petition alleged that, on March 11, 2016, Father was taken to a hospital because he was acting "bizarrely," was found to be on multiple drugs, and that Father has a history of substance abuse. App. p. 22. The petition further alleged that D.P. had missed twenty-three days of school and was suffering from educational neglect.

On April 14, 2016, the trial court held a pre-trial hearing. Subsequently, the trial court entered an order stating in part that Father's attorney "reports father was engaged in a methadone program in the past. [Counsel] states that father was taking opiates as he is no longer in a methadone program, but mother did not know and was not providing the opiates." *Id.* at 50. D.P. remained in Mother's care and custody, but Father was ordered to leave the home.

[5] The trial court conducted a fact-finding hearing on August 29, 2016. Father did not appear at the hearing. At the outset of the hearing, counsel for Mother stated, "My client is going to agree that her child is in need of services because they're [sic] pending domestic violence charges that were filed against father." Tr. p. 5. A family case manager, Kyla Thomas, testified for DCS that Father had been referred for services, including twice for a substance abuse assessment, but that he had only participated in services "until July." *Id.* at 9. Thomas then stated that she had not spoken to Father since April 2016 and that, "I learned today that he's incarcerated." *Id.* Father's counsel objected to this statement. Thomas then was asked how she knew that Father was incarcerated, and she said, "the Marion County website," without elaboration. *Id.* at 10. Father again objected on hearsay grounds, which the trial court overruled.

[6] Thomas also testified that DCS had "concerns with [Father's] repeat substance abuse . . . ." *Id.* at 11. Father objected to this statement on hearsay grounds because it was based on third-party reports, to which DCS's attorney said, "I got nothing for that one." *Id.* The trial court then asked what Thomas's basis for her testimony was, and she said, "The last screens I have for [Father] are positive." *Id.* The trial court sustained Father's renewed objection to that statement as hearsay and no more evidence was presented on Father's drug use.

[7] Thomas then testified that DCS had concerns about domestic violence in the family. Father again objected to this testimony on hearsay grounds. The following colloquy then ensued:

[DCS]: Judge, I have a cause number for you for the domestic violence case. There is a no-contact order with—listing [Mother] as the victim.

[Father's attorney]: Judge, if I can follow up you know I don't believe that that makes anything not hearsay unless this, unless DCS has certified copies of something you know or . . .

[DCS]: Rule 201 allows you to take judicial notice of records of the Court.

[Court]: And have you had conversations with either of the, the parents about the domestic violence.

[Thomas]: When I, I asked about the incarceration and mom didn't—she just disclosed that it was stupidity that got him arrested, but didn't mention anything about the incident that occurred and yesterday indicated that she wants to reunify and have the family back together.

[Court]: Okay.

[Thomas]: Still not know anything about it.

[Court]: Alright. What is the cause number that you have?

[DCS]: 49G02-1608-F5-031060.

* * * * *

[Court]: Okay. Alright, I'll-I'll overrule the objection, but I guess it's sustain in a sense that I'm going to allow the cause number to be put into the record and I will take judicial notice

that it is felony case out of Court G2 and that's in Marion County?

[DCS]: Yes.

*Id.* at 12-13.

[8] Thomas also testified that she had no firsthand knowledge of why Father could not be in the family home. She further related Mother's statement to her that Mother "doesn't know when [Father]'s under the influence and he's reported that he'll be an addict for the rest of his life," which concerned Thomas. *Id.* at 16. After Thomas's testimony, both DCS and Father rested. The trial court then orally announced that D.P. was a CHINS. It entered a dispositional order as to Mother shortly thereafter and scheduled a dispositional hearing for Father for September 22, 2016. At that hearing, Father again did not appear. The trial court asked his attorney whether he was "still incarcerated" and the attorney confirmed that he was, "pending trial." *Id.* at 24. The trial court then proceeded to disposition as to Father, ordering him to complete a "Father Engagement Program." App. p. 86. Father now appeals.[1]

## Analysis

[9] The dispositive issue we address is whether there is sufficient evidence to support the CHINS determination. When reviewing the sufficiency of the

---

[1] Mother does not join in the appeal.

evidence for a trial court's CHINS determination, "'[w]e neither reweigh the evidence nor judge the credibility of the witnesses.'" *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014) (quoting *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012)). We must instead consider only that evidence supporting the trial court's decision and any reasonable inferences drawn therefrom. *Id.* at 1287.

[10] The trial court here entered limited sua sponte findings and conclusions supporting its CHINS finding, although such findings and conclusions are not statutorily required. *See id.* "As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment." *Id.* We review any remaining issues not covered by the findings under the general judgment standard, meaning we will affirm a judgment if it can be sustained on any legal theory supported by the evidence. *Id.* Also, as a general rule appellate courts grant latitude and deference to trial courts in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record. *Id.*

[11] Under Indiana Code Section 31-34-1-1, a child under eighteen years old is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

DCS did not allege any other statutory basis for finding D.P. to be a CHINS.[2] DCS bears the burden of proving by a preponderance of the evidence that a child is a CHINS. *In re S.A.*, 15 N.E.3d 602, 607 (Ind. Ct. App. 2014), *trans. denied*.

[12] A CHINS proceeding focuses on the best interests of the children, not the "guilt or innocence" of either parent. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). The purposes of a CHINS case are to help families in crisis and to protect children, not punish parents. *In re S.D.*, 2 N.E.3d at 1285. Governmental intrusion into a family's life is reserved only for families who cannot meet a child's needs without coercion—"not merely those who have difficulty doing so." *Id.* It is not enough for DCS to prove that one or the other of a child's parents suffers from shortcomings; rather, there must be evidence that the

---

[2] Another ground for finding a child to be a CHINS include if an act or omission of a parent or guardian seriously endangered the child's mental or physical health. *See* Ind. Code § 31-34-1-2. This would seem to more squarely fit an allegation that a child is harmed by domestic violence in the family household.

parents are unlikely to meet a child's needs absent coercive court intervention. *In re S.A.*, 15 N.E.3d at 611-12. And, evidence that a child is endangered is not by itself enough to warrant a CHINS finding and the State's parens patriae intrusion into family life. *In re S.D.*, 2 N.E.3d at 1287. On the other hand, a court need not wait until a tragedy occurs before entering a CHINS finding. *In re R.S.*, 987 N.E.2d 155, 158 (Ind. Ct. App. 2013).

[13] Father first contends the trial court erred in taking judicial notice that he was incarcerated on the date of the fact-finding hearing. At the hearing, DCS attempted to introduce evidence of Father's incarceration through Thomas's reference to having learned of it from "the Marion County website," without elaboration. Tr. at 10. On appeal, DCS makes no attempt to argue that this testimony was sufficient to establish judicial notice of Father's incarceration. Rather, it contends there was other evidence in the record from which Father's incarceration could be inferred and also notes that at the dispositional hearing Father's attorney seemed to concede that Father was "still incarcerated." *Id.* at 24.

[14] Even if we were to assume there is sufficient evidence in the record that Father was incarcerated at the time of the fact-finding hearing, aside from Thomas's reference to the "Marion County website," we still would conclude there is insufficient evidence to support the CHINS finding. DCS admits in its brief, "the record in this case was limited." Appellee's Br. P. 14. Indeed it was, and DCS appeared to try this case almost entirely upon Mother's admission and judicial notice.

With respect to Mother's admission, we note the following. It is true that one parent's admission that his or her child is a CHINS may be sufficient to support a CHINS adjudication; it is not necessary to find that a child is a CHINS with respect to both parents. *In re N.E.*, 919 N.E.2d at 106. "A CHINS adjudication focuses on the condition of the child. . . . [T]he acts or omissions of one parent can cause a condition that creates the need for court intervention." *Id.* at 105. "Indeed, to adjudicate culpability on the part of each individual parent in a CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child's circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court." *Id.* at 106. The specific facts of *N.E.* were that, "Mother failed to protect N.E. and her siblings from ongoing domestic violence between herself and the alleged father of her youngest child and that there had been several incidents of domestic violence against Mother in the presence of her children." *Id.* at 106. The appellant in N.E. was the father of another one of the mother's children, and was not himself accused of any domestic violence. *Id.* Mother admitted to the CHINS allegation that she failed to protect the children from ongoing domestic violence. *Id.* Our supreme court held, "In these circumstances, it was not necessary for the CHINS petition to make any allegations with respect to Father." *Id.* However, the court held there were insufficient findings to support the trial court's dispositional decision not to place the father-appellant's child with him and reversed the dispositional order on that basis. *Id.* at 108.

[16] Two years after *In re N.E.*, our supreme court revisited the question of finding a child to be a CHINS based on only one parent's admission in *In re K.D.* In that case, the mother purported to admit that her children were CHINS because the appellant (the children's stepfather) was an untreated sex offender and because the mother nonetheless continued to allow the stepfather to live in the home; the stepfather denied the allegations. The court in *K.D.* noted that, unlike in *N.E.*, it was necessary to prove allegations against both the mother and the stepfather in order to support a CHINS finding. *In re K.D.*, 962 N.E.2d at 1256. The court held that, in the case before it, the trial court erred and violated the stepfather's due process rights by failing to hold a fact-finding before finding the children to be CHINS. *Id.* at 1257-58. "Situations can exist where an admission by a parent would be incapable of providing a factual basis for the CHINS adjudication." *Id.* at 1256. The court further clarified:

> *In re N.E.* does not stand for the proposition that anytime a parent makes an admission that the child is a CHINS, such adjudication automatically follows. Each circumstance when a parent admits the allegations set forth in the DCS petition is case specific. Each parent has the choice to admit the child is in need of services.

*Id.* Furthermore:

> [A]n abundance of caution should be used when interfering with the makeup of a family and entering a legal world that could end up in a separate proceeding with parental rights being terminated. We hold that when one parent wishes to admit and another parent wishes to deny the child is in need of services, the trial court shall conduct a fact-finding hearing as to the entire matter.

*Id.* at 1259. The court also held that holding a contested dispositional hearing on behalf of stepfather after finding the children were CHINS was insufficient to satisfy due process concerns and the CHINS statutes. *Id.*

[17] The necessary takeaway after *K.D.* is that, although one parent's admission *may* be sufficient to support a CHINS adjudication, it is not *automatically* sufficient. Otherwise there would seem to be little point in offering a hearing to the non-admitting parent. It additionally is clear from *K.D.* that regular rules of procedure apply to such a fact-finding hearing, including that DCS continues to bear the burden of proving the children are CHINS.

[18] Here, Mother admitted to D.P. being a CHINS on the morning of the fact-finding hearing, apparently based on a conversation she had with Thomas the day before. There is no indication Father was previously aware that Mother was going to admit D.P. was a CHINS. The trial court, evidently aware of *K.D.*'s holding, did not immediately accept Mother's admission but took it under advisement pending completion of the fact-finding hearing. Further, Mother's admission accused primarily Father, not her or a third party, of conduct that was endangering D.P. It is true that one parent's failure to protect children from being exposed to domestic violence may support a CHINS finding. *See In re N.E.*, 919 N.E.2d at 108. But unlike the mother in *In re N.E.*, Mother's admission here was based on Father's conduct, not a third party's. Under the circumstances, that admission was not binding upon Father or conclusive evidence that D.P. was, in fact, a CHINS.

[19]     During the fact-finding hearing, DCS's attempts to present evidence of Father's continued drug use were objected to, and the trial court sustained those objections. Thomas did testify without objection that Mother told her that Father had told Mother he would "be an addict for the rest of his life" and that Mother "doesn't know when he's under the influence . . . ." Tr. at 16. Father's comment about being a life-long addict appears to us to be standard therapy-speak for persons battling substance abuse. Mother's lack of knowledge about when or whether Father was under the influence does not establish that Father recently had been under the influence.

[20]     In the CHINS order, the trial court stated that it was taking "judicial notice" of preliminary reports and other filings during the course of the proceedings. App. p. 74. Some of the reports referenced Father's drug use. However, we believe it would stretch the concept of judicial notice too far to allow the contents of the previous filings in this case to be accepted as substantive evidence.

[21]     Indiana Evidence Rule 201 provides in part:

> **(a) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice:
>
> (1) a fact that:
>
>> (A) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or

(B) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

(2) the existence of:

(A) published regulations of governmental agencies;

(B) ordinances of municipalities; or

(C) records of a court of this state.

**(b) Kinds of Laws That May Be Judicially Noticed.** A court may judicially notice a law, which includes:

(1) the decisional, constitutional, and public statutory law;

(2) rules of court;

(3) published regulations of governmental agencies;

(4) codified ordinances of municipalities;

(5) records of a court of this state; and

(6) laws of other governmental subdivisions of the United States or any state, territory or other jurisdiction of the United States.

With respect to "court records," the rule states that the fact of a record's existence may be judicially noticed under subsection (a), or law contained within such records may be judicially noticed under subsection (b). It does not

provide for notice of all facts contained within a court record. Even if court records may be judicially noticed, "facts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice." *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004), *trans. denied*.[3] "Unless principles of claim preclusion apply, judicial notice should be limited to the fact of the record's existence, rather than to any facts found or alleged within the record of another case." *Id.* Applying these principles here, taking notice of substantive facts contained in preliminary filings in this case would exceed the proper bounds of judicial notice principles. Indeed, if a trial court hearing a CHINS matter could simply rely upon the facts alleged in such preliminary filings, it would seem to obviate the need for a fact-finding hearing. DCS did not present any independent, admissible evidence at the fact-finding hearing regarding Father's drug use.[4]

[23] DCS directs us to the following passage from a decision of our supreme court:

> "[B]ecause of the doctrine of *Parens Patriae* and the need to focus on the best interest of the child, the trial judge, who is the fact finder, is required to be an attentive and involved participant in the process. While he must depend upon the litigants to present the evidence to establish the particular elements or defenses in the termination case, he is not limited to their presentations, and

---

[3] *Brown* was decided before Indiana Evidence Rule 201 was amended to allow courts to take judicial notice of any state court records; it addressed a trial court taking judicial notice of its own records in the very case being tried. However, we believe its general observations regarding the proper extent of judicial notice of a court record, when such notice is permitted, are still valid.

[4] DCS also made no attempt to present any evidence to support its original allegation that D.P. was subject to educational neglect because of multiple school absences.

as in any custody case, he may require more than they present and direct further investigation, evaluations or expert testimony to assure him that the interests of the child and the respective parties are properly represented. Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings."

*Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004) (quoting *In re Adoption of T.M.F.*, 392 Pa.Super. 598, 573 A.2d 1035, 1042-43 (1990)). *Baker* addressed the proper standard to apply when addressing a claim that a parent received ineffective assistance of counsel in a termination proceeding and highlighted the important and active role that trial courts have in matters involving children, such as by directing further investigation if it is not satisfied with what the parties have presented. To the extent DCS suggests *Baker* permits trial courts to consider inadmissible evidence or evidence outside the record in deciding a case involving children, we disagree.

[24] This brings us to the question of domestic violence. Again, DCS relied almost entirely upon judicial notice to present evidence of domestic violence to the trial court. No documentation was presented to the court regarding charges against Father. It would have been preferable to provide actual documents, but it was not fatal to the trial court's taking judicial notice of the charges against Father. *See Horton v. State*, 51 N.E.3d 1154, 1161-62 (Ind. 2016). "[B]ecause Indiana's implementation of a unified statewide electronic case management system (CMS) is well underway, many court records will soon likewise be at the fingertips of any court, litigant, or member of the general public." *Id.* We have

determined, by searching the case number provided by DCS on the Odyssey case management system available to Indiana courts, that Father in fact was charged, on August 10, 2016, with one count of Class B misdemeanor battery and one count of domestic battery against Mother, elevated from a Class A misdemeanor to a Level 5 felony because of a 2013 domestic violence conviction for Father; Mother was the victim in the previous offense as well.

[25]   Beyond the fact that Father was charged, however, we believe it would be inappropriate to delve into such matters as the content of the probable cause affidavit filed in the criminal case. That would cross the line into alleged facts that would not be capable of being readily determined as accurate. The trial court properly seemed to take the same approach to the charges against Father. Thus, we are left with no detailed information about the alleged battery incident. All we properly have before us is the fact that Father was charged, and Thomas relating Mother's statement that "it was stupidity that got him arrested . . . ." Tr. p. 12.

[26]   We are cognizant that, "a child's exposure to domestic violence can support a CHINS finding." *K.B. v. Indiana Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015). Additionally, a single incident of domestic violence in a child's presence may support a CHINS finding, and it need not necessarily be repetitive. *See id.* at 1003-04. In *K.B.*, there was evidence that the parties' children witnessed domestic violence and were old enough to comprehend it. Here, however, there was no evidence that domestic violence ever occurred in D.P.'s presence. Thus, even if there is sufficient evidence, by a preponderance

of the evidence, that Father was accused of battering Mother, there is no evidence as to the impact of the incident upon D.P., or whether the coercive intervention of the court is necessary to protect the child. Domestic violence is a very serious matter, but we cannot conclude that one arrest for that crime automatically makes the accused and alleged victim's child a CHINS without any evidence as to the details of the alleged incident.[5]

[27] DCS contends, "once the juvenile court determines a child has a CHINS condition, the court may infer that such condition would continue in the absence of court intervention." Appellee's Br. p. 24. For this proposition, DCS cites *Matter of M.R.*, 452 N.E.2d 1085, 1089 (Ind. Ct. App. 1983), which held: "Having concluded that Mother's actions were detrimental to her children's well-being, the trial court was entitled to believe that such conduct would continue in the absence of court intervention."[6] DCS contends that, once it presents evidence of some endangerment to a child, such as an incident of domestic violence between the parents, "the coercive intervention of the court is necessarily a legal conclusion that the court must make based upon the evidence before it." Appellee's Br. p. 25.

---

[5] Under Indiana Code Section 31-34-1-3(b), a child is automatically a CHINS is he or she is living with a person charged with one of the expressly-listed crimes against children, such as child molestation, prostitution, or incest, and the coercive intervention of the court is necessary to ensure the child is receiving necessary care, treatment, or rehabilitation. There is no provision automatically making a child a CHINS if one parent is charged with domestic violence against the other parent.

[6] DCS also cites *In re C.S.*, 863 N.E.2d 413, 418 (Ind. Ct. App. 2007), *trans. denied*. We find no support in this case for the proposition DCS advances.

[28]     We believe that *M.R.* is no longer valid authority for the proposition that a trial court may infer coercive intervention is necessary once a "CHINS condition" has been proven. Our supreme court has clearly established that the question of whether coercive intervention is necessary is a separate and distinct element of a CHINS action that DCS must prove. *See In re S.D.*, 2 N.E.3d at 1285, 1290. "Not every endangered child is a child in need of services, permitting the State's *parens patriae* intrusion into the ordinarily private sphere of the family." *Id.* at 1287. The element of whether coercive intervention is necessary "guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the ability to provide for their children,' not merely where they 'encounter difficulty in meeting a child's needs.'" *Id.* (quoting *Lake Cnty. Div. of Family & Children Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994)). In other words, *S.D.* supports our conclusion that the mere fact of Father's domestic violence arrest is not enough by itself to establish that the coercive intervention of the court was necessary to protect D.P.

[29]     We are aware that DCS faces challenges with respect to heavy caseloads and high turnover rates among its caseworkers and attorneys. Here, though, the scant evidentiary record as to Father, and almost exclusive reliance on questionable judicial notice, is fatal to DCS's case.

## Conclusion

[30]     Despite Mother's admission, we conclude DCS failed to meet its burden of proving D.P. is a CHINS in light of Father's refusal to concede to Mother's

admission and the lack of admissible evidence to support all the elements of a CHINS action. We reverse.

[31] Reversed.

Robb, J., concurs.

Kirsch, J., dissents with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of D.P. (Minor Child), | Court of Appeals Case No. 49A02-1610-JC-2367 |
| and, | |
| M.P. (Father), | |
| Appellant-Respondent, | |
| v. | |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Kirsch, Judge, dissenting.**

[32]   I respectfully dissent and would affirm the trial court's determination.

[33]   Acting under its *parens patriae* power, the State may interfere with parental autonomy when it is "necessary to protect the health and safety of children." *In re V. H.,* 967 N.E.2d 1066, 1072 (Ind. Ct. App. 2012).  The purpose of the

CHINS statute is "to help families in crisis—to protect children, not punish parents." *In re S.D.,* 2 N.E.3d 1283, 1285 (Ind. 2014).

[34] Father did not appear for the fact-finding hearing because he was in jail, awaiting trial on Domestic Battery as a Level 5 felony. The charge was elevated from a Class A misdemeanor because of Father's 2013 Domestic Battery conviction. Mother was the victim of the domestic violence in the prior conviction and the complaining witness in the pending charge. In addition to the issues of repeated spousal abuse, Father has been referred for substance abuse treatment on more than one occasion.

[35] D.P.'s family was in a crisis. The trial court appropriately acted to protect the child. Its CHINS adjudication is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention; it is not a determination of parental fault. *In re N.E.,* 912 N.E.2d 102, 105.