## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/22/2017, 11:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

S. Rod Acchiardo
Tell City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:
J.J. (Minor Child)
A Child in Need of Services

and

A.J. (Father)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services

*Appellee-Petitioner.*

August 22, 2017

Court of Appeals Case No.
62A01-1701-JC-142

Appeal from the Perry Circuit Court

The Honorable M. Lucy Goffinet, Judge

Trial Court Cause No.
62C01-1604-JC-78

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent A.J. ("Father") appeals the juvenile court's determination that J.J. ("Child") is a child in need of services ("CHINS"). In April of 2016, Appellee-Petitioner the Indiana Department of Child Services ("DCS") received a report that Child's mother ("Mother") had physically attacked his sister and that Mother had been arrested as a result. Child was removed from the home and DCS filed a CHINS petition. Child was placed with a foster family because Father was on parole at the time. The juvenile court conducted a fact-finding hearing on December 14, 2016. On December 22, 2016, the juvenile court entered its dispositional order, finding Child to be a CHINS.

[2] Father argues that there was insufficient evidence to support the CHINS adjudication by the juvenile court. Specifically, he raises the following restated issues: (1) whether DCS produced sufficient evidence to support the finding that Child's physical or mental condition is seriously impaired or endangered and (2) whether DCS produced sufficient evidence to support the finding that coercive intervention of the court is necessary. Concluding that DCS did produce sufficient evidence to establish by a preponderance of the evidence that Child's physical or mental condition is seriously impaired or endangered and court intervention is necessary to ensure Child's care, we affirm.

# Facts and Procedural History

[3] Family Case Manager ("FCM") Shauncae Bighman received an initial report regarding a physical altercation between Mother and Child's sister that occurred on April 11, 2016. The sister involved in the altercation was not Father's child. When FCM Bighman went to the home to investigate, Mother had already been taken into custody.

[4] The altercation occurred when Father dropped off Child and his other child at Mother's house because the two children were living with Mother.[1] Father witnessed Mother lunging at her daughter, the daughter trying to defend herself, and Mother throwing her to the ground. FCM interviewed Father and all of the children because they were all present for the altercation.[2]

[5] After interviewing the children, FCM Bighman called her supervisor, who instructed FCM Bighman to detain the children due to Mother's incarceration. Father was not considered for placement because he was on parole at the time, was not Child's custodial parent, and did not live at the address where the battery took place. On April 12, 2016, the Perry County DCS filed a petition alleging that Child was a CHINS.[3]

[6] On July 24, 2016, three months after the battery incident, Father was charged with terroristic threatening and wanton endangerment. Father allegedly

---

[1] Neither of these children was involved in the altercation.

[2] Child was fourteen at the time that he witnessed the incident.

[3] On October 12, 2016, Mother admitted to the allegations in the CHINS petition. On December 6, 2016, the juvenile court entered a dispositional order as to Mother.

threatened to kill a man and the man's baby and chased the man down the road at one hundred miles per hour. Father received misdemeanor convictions for the charges. The trial court sentenced Father to time served and two years of non-reporting probation and ordered him to stay five hundred feet away from the man that he threatened. Father had to change jobs because he and the man worked for the same employer at the time of the incident.

[7] The juvenile court conducted a fact-finding hearing on December 14, 2016. During the hearing, evidence was presented regarding Father's background and participation with DCS services. Specifically, the juvenile court heard evidence that Father was offered services from DCS during the underlying proceeding but chose to only participate in visitation services. Father's visits, however, were inconsistent, with Father having cancelled multiple times due to being incarcerated or not having the financial means to visit. Father also told someone he worked with that he did not have the financial means to feed the children.

[8] Father has one address in Cannelton, Indiana, that he uses for legal purposes and another in Cloverport, Kentucky. DCS has not inspected the home in Kentucky because it is out-of-state. Father's other address is in a trailer park in Indiana, but he does not live there now. The children are currently placed with a couple in Tell City, Indiana.

[9] Father works at Wilcox Trucking and Big O Tires in Hardinsburg, Kentucky. He earns approximately $9.00 per hour and, with overtime, makes

approximately $400.00 per week. Father currently resides in a five-bedroom house with his girlfriend. His girlfriend is unemployed but receives $733.00 per month in disability. The girlfriend also has a previous history with child protective services.

[10] Each month, Father pays $125 for rent for the Kentucky house, $125 for rent of the lot for the trailer in Indiana, and about $140 for housing expenses. In addition to car insurance and gasoline, Father pays $151.50 per week in child support. The child support is automatically taken out of Father's paycheck.

[11] Child takes medication for a seizure disorder. DCS did not obtain any information that Father would be capable of handling Child's medical needs such as regular medication management and attendance at regular doctor appointments. While Father has attended doctor appointments in the past, Mother took Child to all of his regular doctor appointments. On December 22, 2016, the juvenile court entered its dispositional order, finding Child to be a CHINS.

# Discussion and Decision

## I. Standard of Review and Statutory Requirements

[12] In reviewing a juvenile court's determination that a child is in need of services, "[w]e neither reweigh the evidence nor judge the credibility of the witnesses." *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Instead, "[w]e consider only the

evidence that supports the [juvenile] court's decision and reasonable inferences drawn therefrom." *Id.*

[13] Here, the juvenile court entered only abbreviated findings and conclusions. (Unlike CHINS dispositional decrees, *see* Ind. Code § 31-34-19-10, a juvenile court is not required by statute to include formal findings in a CHINS fact-finding order, and neither party requested them under Indiana Trial Rule 52(a)). "As to the issues covered by the findings, we apply the two-tiered standard of whether evidence supports the findings, and whether the findings support the judgment." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). However, we review the remaining issues under the general judgement standard, under which a judgement 'will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

> Also, as a general rule appellate courts grant latitude and deference to trial courts in family law matters. This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record.

*Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017).

[14] DCS bears the burden of proving that a child is a CHINS by a preponderance of the evidence. Ind. Code § 31-34-12-3. Under Indiana Code section 31-34-1-1, a child under eighteen years old is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

"That final element guards against unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the ability to provide for their children,' not merely where they 'encounter difficulty in meeting a child's needs.'" *In re S.D.*, 2 N.E.3d at 1287. Here, the court adjudicated Child as a CHINS under Indiana Code section 31-34-1-1 finding that "[t]he Child needs care, treatment or rehabilitation that Child is not receiving and is unlikely to be provided without the coercive intervention of the Court" and a "CHINS determination is in the best interest of the [C]hild." Appellant's App. p. 11.

## II. Whether the Juvenile Court's CHINS Adjudication is Clearly Erroneous

Father argues that the evidence does not support the juvenile court's conclusion that Child is a CHINS. Specifically, Father argues that "[t]here is no evidence that the minor child has ever lacked food, shelter, clothing or any of his other needs." Appellant's Br. p. 9. DCS, however, contends that the fact that Child

witnessed a domestic violence incident in his Mother's home is sufficient for Child to be considered a CHINS because his physical or mental condition has been endangered or impaired. DCS also points to the fact that court intervention was necessary because Father is not capable of ensuring that Child receives the care he needs due to the fact that he does not have custody, is on parole, lacks financial means, and did not participate in the services offered to him by DCS.

## A. Child's Physical or Mental Condition is Seriously Impaired or Endangered

[16] DCS initially became involved with this matter when it received a report on April 11, 2016, that Child's Mother had been in a physical altercation with Child's sister. When FCM Bighman arrived at the home, Mother had already been taken into custody by law enforcement. FCM Bighman subsequently interviewed the witnesses and learned that Child was present when his Mother attacked his sister.

[17] 
> We note that a child's exposure to domestic violence can support a CHINS finding." "Moreover, the CHINS statute does not require the juvenile court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is endangered.

*K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015). In this case, Child was fourteen years old when he witnessed his Mother attack his sister making him old enough to comprehend the violence.

[18] Father contends that Child has never "lacked food, shelter, clothing or any of his other needs." Appellant's Br. p. 9. Father also contends that he "has a five-bedroom house, full-time employment and is fully willing and prepared to meet the food, shelter, clothing and care which his son J.J. may require." Appellant's Br. p. 9. These arguments are merely a request for this court to reweigh the evidence, which we will not do. *In re K.D.*, 962 N.E.2d at 1253.

## B. Coercive Authority of the Court

[19] Father also challenges the necessity of the juvenile court's coercive intervention. He repeats his claims that he is capable of providing Child with the food, shelter, clothing, and care that he needs. Father also points to the fact that there have been no allegations against him for misconduct or abuse. Father, however, misunderstands the purpose of CHINS proceedings. The focus of such proceedings is on the

> best interests of the child and whether the *child* needs help that the parent will not be willing or able to provide—not whether the *parent* is somehow "guilty" or "deserves" a CHINS adjudication. But that help comes not by invitation, but compulsion—imposing the court's "coercive intervention" into family life. And a CHINS adjudication may have long-lasting collateral consequences for the family. The intrusion of a CHINS judgment, then, must be reserved for families who *cannot* meet those needs without coercion—not those who merely have *difficulty* doing so.

*In re S.D.*, 2 N.E. 3d 1283, 1285 (Ind. 2014).

[20] As mentioned earlier, DCS first became involved with this case due to the domestic violence incident with Mother. There was also evidence from the Child's sister that domestic violence was an ongoing issue. Father did not have custody of Child and was on parole at the time of the battery incident. Father was given the opportunity to receive services after Child was removed from Mother, but he only participated in visitation. In fact, Father was not even consistent about his visitation due to being incarcerated and not having the financial means to visit.

[21] Of significant concern is the fact that just three months after the battery incident with Mother, on July 24, 2016, Father was charged with terroristic threatening and wanton endangerment. Father allegedly threatened to kill a man and his baby, and chased the man down the road at one hundred miles per hour. He was sentenced to two years of non-reporting probation. Any future arrests will result in Father's incarceration.

[22] Father claims he has a good job that would allow him to support Child. This claim, however, is inconsistent with his claim that he did not have the financial means to visit Child while he was placed with a foster family. The only evidence of Father meeting Child's needs is that he pays child support, and it is automatically taken out of his paycheck. Having child support taken out of your paycheck is not the same as providing for the care, treatment, and rehabilitation of Child by managing his health needs and protecting him from exposure to domestic violence.

[23] "We note that a "CHINS finding should consider the family's condition not just when the case was filed, but also when it is heard." *In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014). Here, at the time of the hearing, there was no evidence that Father had and would continue to have the ability to meet Child's needs. The evidence shows that Father did not accept services from DCS and made no effort to show that he was capable of managing Child's care and medication and ensuring that Child attended his regular doctor appointments without court intervention. All of Father's arguments amount to a request that we reweigh the evidence, which we will not do. *In re K.D.*, 962 N.E.2d at 1253.

[24] The judgment of the juvenile court is affirmed.

May, J., and Barnes, J., concur.