## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 06 2018, 5:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR
APPELLANT/FATHER

Michael D. Ghilardi
Law Office of Michael D. Ghilardi
Fort Wayne, Indiana

ATTORNEY FOR
APPELLANT/MOTHER

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: A.K., A.P., G.G., and A.G. (Minor Children in Need of Services);

H.K. (Mother) and T.G. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

April 6, 2018

Court of Appeals Case No.
02A04-1708-JC-1942

Appeal from the Allen Superior Court

The Honorable Sherry A. Hartzler, Magistrate

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1702-JC-70
02D08-1702-JC-71

*Appellee-Petitioner.*

02D08-1702-JC-72<br>02D08-1702-JC-73

**Pyle, Judge.**

## Statement of the Case

H.K. ("Mother") and T.G. ("Father") (collectively "Parents") appeal the trial court's order adjudicating A.K., A.P., G.G., and A.G. to be Children in Need of Services ("CHINS"). Parents specifically argue that there is insufficient evidence to support the adjudication. Concluding that the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the CHINS adjudication, we affirm the trial court.

We affirm.

## Issue

Whether there is sufficient evidence to support the CHINS adjudication.

# Facts

[3] Mother is the parent of A.K. ("A.K."), who was born in August 2012; A.P. ("A.P."), who was born in January 2014; G.G. ("G.G."), who was born in September 2015; and A.G. ("A.G.") (collectively "the children"), who was born in October 2016. Father is the parent of G.G. and A.G.[1] When A.G. was born, his meconium tested positive for THC. Mother and Father also tested positive for THC, and Mother admitted that she had smoked marijuana while she was pregnant. DCS opened an investigation but did not remove the children from the home.

[4] Following a February 2017 initial hearing, the trial court found probable cause to believe that the children were CHINS and authorized DCS to file a CHINS petition. The trial court also ordered Mother and Father to submit to drug and alcohol assessments at Bowen Center, follow all assessment recommendations, enroll in home-based services, submit to random urine drug tests, and refrain from the use of illegal drugs. DCS filed a CHINS petition one week later.

[5] The trial court held a hearing on the CHINS petition in April 2017. Testimony at the hearing revealed that twenty-one-year-old Mother had begun smoking marijuana when she was twenty years old and had smoked marijuana once every two weeks at the end of her pregnancy. According to Mother, she "had a lot of stress at the time [and] did not have insurance and did not have any kind

---

[1] The fathers of A.K. and A.P. are not parties to this appeal.

of relief to be able to deal with that from a doctor. [She] couldn't pay out of pocket at that time." (Tr. 10). Mother continued to smoke marijuana following A.G.'s birth and even after DCS became involved in the case. At the hearing, Mother claimed that she had last used marijuana in the middle of January 2016.

[6] Mother further stated that she had been attending weekly "drug sessions" at Bowen Center. (Tr. 10). Although DCS was paying for the sessions at the time of the hearing, Mother claimed that the family's insurance "would cover part of it and then they also offer payment plans[.]" However, she did not know how much the substance abuse sessions would cost if she had to pay for them herself, and she had not spoken with her insurance provider to determine how much it would cover.

[7] Mother stated that she "just [didn't] feel like the intervention of the Court [was] needed." (Tr. 14). Mother explained that she realized that she had made a mistake and had previously needed the services to which DCS had referred her. She, however, asserted that she now believed that she and Father were "fine on [their] own and [they could] do it by [themselves]." (Tr. 14). She told the trial court that she would be "upset" if the court adjudicated her children to be CHINS because she did not "feel like [her] family need[ed] that." (Tr. 14). At the time of the hearing, Mother was employed as a restaurant assistant manager and earned $9.00 per hour.

[8] Twenty-three-year-old Father testified that he had first used marijuana when he was sixteen years old. When he was eighteen years old, he used marijuana

three to four times a month. He admitted that it was his idea for Mother to smoke marijuana while she was pregnant because both Mother and Father were emotional following the death of Father's grandfather. Father's last positive drug screen was in October 2016. At the time of the hearing, Father was crew leader kitchen manager at a restaurant where he earned $7.50 per hour. He had medical insurance, and his father paid the cost of the premiums.

[9] Following the hearing, the trial court issued the following relevant findings and conclusions in support of its order adjudicating the children to be CHINS:

### Findings of Fact

A. Through the testimony of Mother, the Court finds that Mother regularly used marijuana prior to her pregnancy since she was twenty (20) years old. Mother was twenty-one (21) years of age at the time of these proceedings.

B. Through the testimony of Mother and Father . . . the Court also finds that Mother used marijuana every two weeks during her pregnancy at the urging of Father . . . .

C. The Court finds that Mother used marijuana up until the birth of her child and until January 2017 after the initiation of the Department's investigation.

D. The Court finds that until recently, Mother did not comprehend the impact her drug use was having on her drug exposed infant and her family. Now, Mother claims that she comprehends the damage her use of illegal drugs has caused.

E. The Court finds that this self-professed acknowledgement of harm to her children and family did not occur until after Mother started her drug and alcohol services. The Court finds

that Mother's drug and alcohol services . . . were not completed at the time of trial.

F.     The Court finds through the testimony of Mother that, but for her involvement in services, she would not have taken any steps toward recovery.

G.     Although Mother claims that she can pay for her drug and alcohol services, she was in fact not currently paying for any of her services; she does not know what the services cost; she has not made any inquiries to determine whether insurance can or will cover the cost; and she was making a weekly income of [$]350.00 with a family of six (6) and two children in diapers.

H.     With respect to Father . . . the Court finds that he was using marijuana to cope with stress prior to and during the Department's investigation after the birth of his drug[-]exposed infant.

I.     The Court finds that Father did not see his drug use as problematic until their youngest child tested positive for marijuana and the Department of Child Services became involved.  Even so, Father continued to use marijuana during the Department of Child Services['] investigation.

J.     The Court further finds that prior to the Department of Child Services['] involvement and the provision of services, Father was previously employed as a heavy equipment operator and was regularly using marijuana against company policy, further indicating that Father did not appreciate the risk and harm associated with his use of illegal drugs.

K.     The Court further finds that Father only started his drug and alcohol services one month prior to the trial in this matter and that services were not completed yet.

L.     The Court finds that father is employed at minimum wage and at approximately 38 hours per week.

M.    The Court takes judicial notice of the Federal Poverty Guidelines and finds that in 2017 the poverty guideline for a family of six (6) is $32,960.00.

N.    The Court finds that the . . . family makes approximately $33,020 per year which puts them only $60.00 above the federal poverty level.

O.    Considering that neither Mother nor Father are aware of what services cost and how same would fit into their budget and disposable income, the Court does not take their statements that they can afford the services as credible.

P.    Although Father claims to have insurance provided by his Father[,] he has not determined if or how much of the services would or could be covered by insurance.

*    *    *    *    *

Conclusions of Law

A.    The Court concludes that is it undisputed that Mother and Father were using illegal drugs and that their infant was born drug exposed.

B.    The Court concludes, through the testimony of Mother and Father that their drug use caused their children and family harm.

C.    The Court further concludes that it is undisputed that both Mother and Father continued to use illegal drugs even after the Department['s] involvement.

D.    The Court also concludes that it is undisputed that the services were not completed at the time of the trial in this matter.

E.    The dispute to be resolved by this Court is whether the parents lack the ability to attend to their treatment and thus the care and treatment of the children.

*    *    *    *    *

G.     The court concludes that Mother and Father lack the ability to independently resolve their drug use. The Court concludes that but for the intervention of this Court and the provision of drug and alcohol services, Mother and Father would have [not] come to the conclusion that their drug use was harming their family. The Court further concludes that but for the intervention of the Court and the provision of drug and alcohol services, Mother and Father would not have begun their recovery. The Court further concludes that the family's condition during the trial was that they had not completed their drug and alcohol services and would not have the ability to obtain these services on their own accord without the involvement of the Department of Child Services.

H.     Therefore the court concludes that the children [A.K.], [A.P.], [G.G.] and [A.G.] are [CHINS] under Ind.Code [§] 31-34-1-1 . . . .

(App. 64-66). Parents appeal the trial court's adjudication that their children are CHINS.

# Decision

[10] Parents argue that there is insufficient evidence to support the CHINS adjudication. When determining whether there is sufficient evidence to support a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This Court will not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 1286. Where, as here, a juvenile court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App.

2014). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id.* Findings are clearly erroneous when there are no facts or inferences to be drawn therefrom that support them. *Id.* A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id.* We further note that, as a general rule, appellate courts grant latitude and deference to trial courts in family law matters. *Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017). "This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record." *Id.*

[11] A CHINS proceeding is a civil action. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Therefore, DCS must prove by a preponderance of the evidence that the child is a CHINS as defined by the juvenile code. *Id.* INDIANA CODE § 31-34-1-1 provides that a child is a CHINS if, before the child becomes eighteen (18) years of age:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[12] A CHINS adjudication focuses on the child's condition rather than the parent's culpability. *In re N.E.*, 919 N.E.2d at 105. The purpose of a CHINS adjudication is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106. A CHINS adjudication in no way challenges the general competency of parents to continue relationships with their children. *Id.* at 105.

[13] Here, Parents argue that there is insufficient evidence to support the CHINS adjudication. They specifically contend that DCS failed to prove by a preponderance of the evidence that the coercive intervention of the court was necessary. The gravamen of their argument is that the coercive intervention of the court was not necessary because, at the time of the hearing, they had "remedied their substance abuse issues and could obtain services on their own." (DCS' Br. at 18).

[14] While we commend Parents for addressing the concerns that led DCS to file a CHINS petition in this case, their argument that they had adequately remedied their drug use essentially asks that we reweigh the evidence. This we may not do. *See In re S.D.*, 2 N.E.3d at 1287. Further, our review of the evidence reveals that Parents were both using marijuana while Mother was pregnant. Mother explained that she was using marijuana because she had a lot of stress and did not have the money to visit a doctor. Father also encouraged Mother to use marijuana because they were both emotional following the death of Father's

grandfather. Mother continued to use drugs after A.G. was born and DCS had become involved in the case. Mother admitted that at that time, she had not realized that she needed the services to which DCS had referred her. By the time of the hearing three months later, Mother had realized that she and Father had needed these services, which they had not yet completed. Mother also believed that she and Father could, at that point, attend and pay for their services on their own. However, she had no idea how much the services cost or how much she would have to pay for them. Given our deferential standard of review, this evidence and the reasonable inferences that flow therefrom support the trial court's determination that Parents had not fully addressed their drug use and would not remedy the issue without the coercive intervention of the trial court. There is sufficient evidence to support the CHINS adjudication.

[15] Affirmed.

Kirsch, J., and Bailey, J., concur.