# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 30 2019, 8:36 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Samantha M. Joslyn
Law Office of Samantha Joslyn
Rensselaer, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.M-C., I.M., E.M., B.M., M.F., Ale.F., Ala.F., Alin.F., and Alia.F., Children in Need of Services,

T.M., Mother,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

July 30, 2019

Court of Appeals Case No. 18A-JC-2838

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause Nos.
37C01-1806-JC-127
37C01-1806-JC-128
37C01-1806-JC-129
37C01-1806-JC-130
37C01-1806-JC-131
37C01-1806-JC-132
37C01-1806-JC-133
37C01-1806-JC-134
37C01-1806-JC-135

**Kirsch, Judge.**

[1] T.M. ("Mother") appeals from the juvenile court's order adjudicating her children to be children in need of services ("CHINS"). Mother raises the following restated issue for our review: whether the juvenile court erred in its CHINS determination because the CHINS adjudication was not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] Mother has nine biological children (collectively, "the Children"). *Tr.* at 46. The father of the four oldest children, J.M-C., I.M., E.M., and B.M., is deceased. *Id.* P.F., Mother's boyfriend ("Boyfriend"), is the father of the younger five children, M.F., Ale.F., Ala.F., Alin.F., and Alia.F. *Id.* At the time the petition was filed, Mother, Boyfriend, and the Children were in the process of moving from Demotte, Indiana to a house in Hammond, Indiana. *Id.* at 50. Boyfriend also has four other children with A.L. *Id.* at 45. A.L. and her four children lived in the same house with Boyfriend, Mother, and the Children. *Id.* at 50.

[4] Indiana Department of Child Services ("DCS") received a report on June 4, 2018, about E.M., who was fourteen at the time, and her newborn child. *Id.* at 45. Two days prior, E.M. had given birth to a child, and a DNA test was conducted that determined that Boyfriend was the father of E.M.'s child. *Id.* at 32-33.

[5]     On June 4, Demotte Police Department Officer Steve Musch ("Officer Musch") went to the family's Demotte home to serve an out of state warrant on Boyfriend. *Id.* at 28. Officer Musch had received information that Boyfriend was "armed and dangerous," and he and the other officers arrived at the house in tactical gear. *Id.* Boyfriend went into the house with B.M., and the Sheriff's tactical squad set up a perimeter to surround the house. *Id.* at 28-29. Mother arrived at the house with I.M. while the officers were there and attempted to go into the house, but Officer Musch physically restrained her from entering. *Id.* at 31. Officer Musch asked Mother about the location of E.M., but Mother repeatedly told the officer, "don't say anything to [Boyfriend] cause [sic] he'll kill me." *Id.* at 32. Boyfriend was eventually arrested, and Mother was transported to the police station. *Id.* at 38, 39.

[6]     At the police station, DCS family case manager Kris Donahue ("FCM Donahue") spoke with Mother in order to locate the rest of the Children. *Id.* at 47. B.M., I.M., and J.M-C. were at the police station, and E.M. was with her aunt in Chicago; the location of the rest was unknown. *Id.* Mother informed FCM Donahue that the rest of the Children were at a house where the family was moving to in Hammond, but she could not remember the address. *Id.* at 48. The police wanted to arrest Mother for resisting law enforcement and disorderly conduct because of her behavior at the house, but FCM Donahue requested that she not be arrested so Mother could have custody of the Children. *Id.* FCM Donahue then worked with Mother to create a safety plan. *Id.* To comply with the safety plan, Mother was not to hinder the criminal

investigation and would work with DCS.  *Id.*  Mother agreed to bring the Children to FCM Donahue the next morning for interviews.  *Id.*

[7]  Mother did not bring the Children in for interviews the next morning.  *Id.* at 49. Instead, A.L. transported the Children, and they arrived at the interviews three hours late.  *Id.*  On June 5, 2018, FCM Donahue decided to detain the Children because of Mother's lack of compliance with the safety plan and the Children's reports of sexual abuse, physical abuse, and neglect.  *Id.*  The Children reported to Donahue that Mother was aware of the abuse and neglect.  *Id.*

[8]  On June 6, 2018, DCS filed petitions alleging the Children to be CHINS. *Appellant's App. Vol. 2* at 84-119.  The petitions alleged that the Children suffered from neglect, physical abuse, and sexual abuse.  *Id.* at 84-85.  The petitions mentioned that Boyfriend had threatened to kill the children and Mother if they told others about the abuse.  *Id.* at 117.

[9]  The petition specifically stated that the Children suffered from educational neglect.  *Id.* at 116.  The Children were not enrolled in school.  *Tr.* at 51.  FCM Donahue asked Mother to provide documents pertaining to the Children's education, and Mother provided some attendance records on August 2, 2018. *Id.* at 52, 53.  Mother told FCM Donahue that the Children had been attending school online through Khan Academy, which FCM Donahue discovered was not an accredited school.  *Id.* at 51-52, 76.  FCM Donahue evaluated the attendance records and discovered that the Children had missed many days of school and that the records only covered two years.  *Id.* at 53.  The Children

told FCM Donahue that they could not remember the schools they attended, and FCM Donahue could not locate any school attendance records. *Id.* at 54. Only one school had a record of the oldest child, J.M-C., who was seventeen at the time of the proceedings, attending in fifth grade. *Id.* at 74.

[10] At the fact-finding hearing on August 8, 2018, FCM Donahue testified about her experience working with the family. *Id.* at 46. She stated that Mother had told FCM Donahue that she was unaware that E.M. was pregnant because she and Boyfriend sent E.M. to live with Boyfriend's sister in Chicago. *Id.* at 47. FCM Donahue stated that one of the other children, B.M., told her that E.M. had been sent away in an attempt to "abort the baby." *Id.* at 46-47. FCM Donahue testified that Mother told her she would not "participate in any services until court ordered." *Id.* at 55. FCM Donahue also stated that Mother failed to abide by the safety plan after Boyfriend's arrest and refused to provide immunization records for the Children, which required DCS to have blood draws taken from the Children to determine if they had been vaccinated. *Id*. at 55-56. Additionally, Mother was not consistent with information about where she was living. *Id*. at 55. Specifically, she provided DCS with an address in Sauk Village as her home address; however, that address was a vacant apartment. *Id*. Because Mother would not give a proper address, DCS was unable to view her apartment to see whether it was suitable and safe for the Children. *Id*. at 56.

[11] At the conclusion of the hearing, the juvenile court found the Children to be CHINS. In its findings issued on August 17, 2018, the juvenile court found that

the Children were CHINS due to E.M. being a victim of sexual violence by a family member, the Children's inconsistency in attending school, the Children reporting incidents of abuse and domestic violence in the home, and Mother not having a consistent address. *Appellant's App. Vol. 2* at 120-22. Mother now appeals.

## Discussion and Decision

[12]    Mother argues that the juvenile court's CHINS determination was clearly erroneous and not supported by the evidence. To determine if there is sufficient evidence to support a CHINS determination, this court will not reweigh the evidence or determine the credibility of witnesses. *In re A.R.*, 110 N.E.3d 387, 400 (Ind. Ct. App. 2018). "We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom." *Id.* Where a juvenile court's order contains specific findings of fact and conclusions thereon, we apply a two-tiered review. *Id.* We first decide if the evidence supports the findings and then determine if the findings support the judgment. *Id.* A determination that a child is a CHINS will only be reversed if the determination was clearly erroneous. *Id.* "A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts." *Id.*

[13]    A CHINS proceeding is a civil matter, and DCS bears the burden of proving the child is a CHINS by a preponderance of the evidence. *Id.* Under Indiana Code section 31-34-1-1, a child is a CHINS if, prior to the age of eighteen:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14] A child is adjudicated a CHINS under Indiana Code section 31-34-1-3(a) if the child is under eighteen and is a victim of an offense under section 35-42-4-3, child molesting, or section 35-42-4-1, rape. Indiana Code section 31-34-1-3 further provides under subsection (b) that a child is a CHINS if the child is under eighteen and:

(1) lives in the same household as an adult who:

(A) committed an offense described in subsection (a)(1) against a child and is awaiting trial.

Lastly, a child is a CHINS if the child is under eighteen and "lives in the same household as another child who is the victim of an offense described in subsection (a)(1)." Ind. Code § 31-34-1-3(c)(1). Here, the juvenile court found that the Children were CHINS as defined by both Indiana Code section 31-34-1-1 and Indiana Code section 31-34-1-3.

[15]     Mother argues that the juvenile court erred in finding educational neglect because the Children were attending the Kahn Academy online. She further argues that there is no state law that requires the Children to attend an accredited school. The evidence presented to the juvenile court showed that the Children did not regularly attend school and had significant absences. *Tr.* at 51, 53. Although Mother provided DCS with attendance records beginning in September 2016 and ending in June 2018, no records prior to September 2016 were ever received by DCS. *Id.* at 53, 54-55. Additionally, while Mother indicated to DCS that the Children were attending Khan Academy, it is not an accredited school and not an equivalent to a school curriculum as required by the Department of Education.[1] Therefore, the evidence demonstrated that the Children did not consistently attend any educational institution. The evidence presented supported the juvenile court's finding that Mother did not meet the educational needs of the Children as required by Indiana Code section 31-34-1-1.

[16]     Mother next contends that the CHINS determination was improper because there was no evidence that the Children were in physical harm at the time of removal from the home as the Children did not have any "bruises or signs of neglect" at that time. We disagree. At the time of removal, the Children

---

[1] Kahn Academy is meant to "fill in gaps in [a student's] education, not to substitute an education curriculum. *See* https://www.khanacademy.org/resources/out-of-school-time-programs/khan-academy-in-out-of-school-programs/a/what-do-we-offer-for-out-of-school-programs (last visited July 17, 2019). The program does not meet the standards as stated by the Indiana Department of Education. *See* https://www.doe.in.gov/standards (last visited July 17, 2019).

reported to FCM Donahue that abuse and domestic violence had been occurring in the home and that Mother was aware of the abuse. *Tr.* at 49. Because Mother knew of the abuse and never intervened, this evidence supported the juvenile court's findings that the Children's physical or mental conditions were seriously impaired or seriously endangered as a result of the Mother's inability, refusal, or neglect to supply the Children with the necessary supervision under Indiana Code section 31-34-1-1.

[17] Mother further asserts that there was no evidence that she was responsible for the sexual abuse of the Children. "A CHINS proceeding focuses on the best interests of the children, not the 'guilt or innocence' of either parent." *In re D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017) (citing *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010)). "[W]hile the acts or omissions of one parent can cause a condition that creates the need for court intervention, the purpose of a CHINS adjudication is to protect children, not to punish parents." *M.K. v. Ind. Dep't of Child Servs.*, 964 N.E.2d 240, 244 (Ind. Ct. App. 2012). Evidence was presented at the fact-finding hearing that Boyfriend raped E.M. several times a month for almost two years, beginning when E.M. was only twelve years old. DNA testing established that Boyfriend was father of E.M.'s child. *Ex. Vol. 3* at 7-9, 21. At the time that E.M. was impregnated, she was thirteen years old, and she gave birth on June 2, 2018, to a full-term infant. *Id.* at 21. E.M. and all her siblings and half-siblings lived together with Mother, A.L., and Boyfriend, in the home in DeMotte for about a year before E.M.'s baby was born. *Tr.* at 50.

The State charged Boyfriend with rape, a Level 3 felony, and child molesting, a Level 1 felony. *Ex. Vol. 3* at 13, 19.

[18] The juvenile court found that Boyfriend was charged with rape under Indiana Code section 35-42-4-1 and child molesting under Indiana Code section 35-42-4-3; the alleged victim was E.M. *Appellant's App. Vol. 2* at 121. The juvenile court further found, "There is ample evidence for the court to find that [Boyfriend] likely committed sexual molestation, sexual battery, and/or sexual misconduct with a minor child as defined by Indiana law." *Id.* Mother denies knowing that E.M. was even pregnant, but E.M. did not move to Chicago until February or March 2018, when she was at least six months pregnant. *Tr.* at 49; *Ex. Vol.* 3 at 27-48. Mother's claim that she was not aware that her daughter was pregnant is not reasonable based on this evidence.

[19] Under Indiana Code section 31-34-1-3(a), a child is adjudicated a CHINS if the child is under eighteen and is a victim of child molesting or rape; under subsection (b), a child is a CHINS if the child is under eighteen and lives in the same household as an adult who committed child molesting or rape against a child and is awaiting trial; and, under subsection (c), a child is a CHINS if the child is under eighteen and lives in the same household as another child who is the victim of child molesting or rape. Here, the evidence showed that Boyfriend had been charged with rape and child molesting and the alleged victim was E.M. At the time that these crimes were alleged to have occurred, all of the Children lived in the same household with Mother and Boyfriend. This

evidence was sufficient to support the juvenile court's finding that the Children were CHINS under Indiana Code section 31-34-1-3.

[20] Finally, Mother argues that there was no evidence that the coercive intervention of the juvenile court is needed to protect the Children. The State rebuts this argument stating that Mother refused to participate in services without a court order. *Appellee's Br.* at 22. We agree. To determine if coercive intervention is necessary, the juvenile court must determine if the parents must be coerced into providing or accepting necessary treatment for their child. *In re E.K.*, 83 N.E.3d 1256, 1262 (Ind. Ct. App. 2017), *trans. denied*. Here, Mother told FCM Donahue that she would not cooperate with service providers unless she was required by court order. *Tr.* at 55. It is, therefore, clear that the only way the Children would receive the necessary care and treatment needed would be through court intervention. There was sufficient evidence that the coercive intervention of the juvenile court was necessary to protect the Children.

[21] Based on the evidence presented at the fact-finding hearing, we conclude that the findings of the juvenile court were not clearly erroneous, and the juvenile court's findings support its judgment that the Children were CHINS. The evidence of abuse, both physical and sexual, and of neglect was not only sufficient, it was overwhelming. We, therefore, affirm the juvenile court's judgment.

[22] Affirmed.

Vaidik, C.J., and Altice, J., concur.