# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 15 2018, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parental Rights of:

Ch.S. & Co.S. (Minor Children)

and

A.R. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 15, 2018

Court of Appeals Case No. 18A-JT-77

Appeal from the Fayette Circuit Court

The Honorable Hubert Branstetter, Jr., Judge

Trial Court Cause Nos.
21C01-1707-JT-267
21C01-1707-JT-268

**Bailey, Judge.**

# Case Summary

[1] A.R. ("Mother") appeals the termination of her parental rights to Ch.S. and Co.S. ("Children") upon the petition of the Indiana Department of Child Services, Fayette County ("the DCS"). She presents a single, consolidated issue: whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.[1] We affirm.

---

[1] Mother asks that, in our review of the evidence, we disregard factual findings derived from the Child in Need of Services ("CHINS") records. The termination order states that certain facts – relative to parental drug screens and housing – were "adopted as facts found for purposes of [the] termination proceeding." (Appealed Order at 2.)

The DCS asked that the trial court take judicial notice of CHINS records, pursuant to Evidence Rule 201(a), which provides that some kinds of facts may be judicially noticed, as follows:

> The court may judicially notice:
>
> (1) a fact that:
>
> (A) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or
>
> (B) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> (2) the existence of:
>
> (A) published regulations of governmental agencies;
>
> (B) ordinances of municipalities; or
>
> (C) records of a court of this state.

The rule permits the trial court to judicially notice "the existence of" records of a court of this state – the language does not extend to judicial recognition of facts within the records. *See In re D.P.*, 72 N.E.3d 976, 983 (Ind. Ct. App. 2017).

However, termination cases "often must refer to and rely heavily upon records in different, but related, proceedings." *In re D.K.*, 968 N.E.2d 792, 796 (Ind. Ct. App. 2012). If a trial court takes judicial notice of the existence of records of other court proceedings, as occurred in this case, "there must be some effort made to include such 'other' records in the record of the current proceeding." *Id.* The taking of judicial notice of

# Facts and Procedural History

[2] Mother and her husband, ("Father"), who is now deceased, had two children, Co.S., born February 27, 2008, and Ch.S., born July 19, 2010. On April 18, 2016, the DCS filed a petition alleging that Children were Children in Need of Services ("CHINS") due to Mother's drug use and parental inability to provide adequate food, shelter, and medical care. On November 22, 2016, Children were adjudicated CHINS.

[3] Mother was ordered to participate in reunification services. She and Father engaged in supervised visitation with Children; Father was the more interactive parent. After Father's death from a heart attack, Mother and Children engaged in therapeutic visitation sessions; the visitation supervisor considered a portion of these visits to be positive parent-child interactions. As to the remainder of the services offered to Mother, she was non-compliant. The DCS plan changed from reunification to termination of parental rights and adoption of Children by their paternal grandmother.

---

records of a court of this state "does not mean that the facts within them were conclusive." *Withers v. State*, 15 N.E.3d 660, 664 (Ind. Ct. App. 2014). Rather, the parties are "free to contest the facts." *Id.*

To the extent that the language of the order on appeal suggests that the trial court merely "adopted" CHINS facts and gave them conclusive effect, this is incorrect. The trial court took judicial notice of the existence of CHINS records, the CHINS records were admitted into evidence, and the DCS elicited testimony consistent with the factual determinations made in the CHINS orders. Thus, despite the trial court's reference to "adoption" of facts, the termination decision did not rest solely upon a paper record. *See In re D.P,*, 72 N.E.3d at 983 (recognizing the need for independent, admissible evidence of a father's drug use as opposed to taking "notice of all facts contained within a court record.") Here, the DCS presented admissible evidence of Mother's conduct and she was not deprived of the opportunity to contest facts underlying the CHINS orders. At bottom, much of Mother's own testimony supports the trial court's findings and conclusions.

[4] On July 25, 2017, the DCS petitioned to terminate Mother's parental rights. An evidentiary hearing was conducted on November 14, 2017, at which Mother, her most recent caseworker, and the visitation supervisor testified. The DCS proffered as evidentiary exhibits 2013 CHINS records and 2016 CHINS records. Upon relevance and hearsay objections from Mother, the trial court admitted into evidence only the more recent CHINS records.

[5] Mother testified regarding her desire to be reunited with Children, her current living arrangements, and her admitted non-compliance with DCS referrals. Mother opined that she needed a "one on one recovery coach" to address any potential for relapse and that the DCS referrals, such as for group therapy, were not appropriate. (Tr. at 72.) Visitation supervisor Myra Hisel ("Hisel") testified that Mother had "lots of missed visits," some attributable to transportation issues, but had enjoyed "good interactions" with Children over the last two months. (Tr. at 40-41.) Hisel estimated that, overall, one in four visits had been positive. Family case manager Molly Parkhurst ("Parkhurst") testified that Mother had been offered various services in addition to visitation but had completed none. Mother had refused multiple drug screens and had tested positive for illegal substances on several screens that were administered.

[6] After the DCS presented its witnesses, DCS counsel asked that the trial court take judicial notice of the CHINS "causes" and the trial court responded that judicial notice would be taken "of those cases." (Tr. at 65.) Mother did not object.

On December 11, 2017, the trial court issued its termination order.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental

responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[10] Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[11]    Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## Analysis

[12]    Mother contends that insufficient evidence supports the termination decision. She first focuses upon whether there is clear and convincing evidence of a reasonable probability that she would fail to remedy the conditions that led to Children's removal.

[13]    This invokes a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a

parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[14] Children were removed due to allegations that their parents were unable to provide them with a drug-free home and other necessities. According to Mother's testimony, the DCS removed Children based upon an allegation that she had maintained "a heroin house." (Tr. at 29.) Mother insisted that she had neither used heroin nor admitted as much to a caseworker, as alleged at the time of removal. Mother had refused several drug screens and had most recently tested positive for amphetamines and methamphetamine. Mother also denied methamphetamine use but proffered an explanation that marijuana she had used might have been adulterated with other substances.

[15] Mother testified regarding her opposition to some of the offered reunification services, as to location, type, and service provider. Mother expressed a preference for continuing to use marijuana; she felt that it helped her avoid more addictive substances. She wanted individual, as opposed to group, therapy, and she wanted to receive services at Centerstone rather than Meridian. According to Mother, she had "already been" to inpatient treatment, she knew herself and her needs, and she did not feel that additional group therapy would be beneficial. (Tr. at 8, 67.) She admitted having refused some drug screens because she "didn't click with" the most recent family case manager and sometimes wanted "just to piss Molly off." (Tr. at 20, 23.)

Mother acknowledged that she was unwilling to sign a release to permit the DCS to obtain her medical records. She had been unemployed for twelve years, but had applied for disability benefits.

[16] Parkhurst testified that Mother had been offered substance abuse treatment, drug screens, home-based case management services, therapy, and child visits. She further testified that Mother: refused multiple drug screens, submitted a recent screen that was positive for methamphetamine and amphetamine, stated in a team meeting that she would not participate in substance abuse services because they were not needed, repeatedly tested positive for marijuana, did not complete individual counseling, did not maintain stable housing, and did not complete the intake process to receive home-based case management services related to parenting skills, housing, or employment.

[17] In sum, Mother was non-compliant with each of the reunification services offered to her and she opposed future services that were not tailored to her terms. The evidence clearly and convincingly supports the trial court's findings of fact regarding Mother's conduct; the findings clearly and convincingly support the conclusion that the conditions leading to Children's removal would not likely be remedied.[2]

---

[2] We need not address Mother's challenge to the trial court's conclusion that there was a reasonable probability that the continuation of the parent-child relationship posed a threat to Children's well-being because Indiana Code section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of subsection (b)(2)(B) has

Mother also contends that the DCS did not present clear and convincing evidence that termination of parental rights is in Children's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. Children have been removed from Mother's care since April of 2016 and Mother has not progressed beyond having supervised visits with Children. As of the termination hearing, she had no independent source of income. She had lived for a month or two in an apartment furnished by a boyfriend. Mother had not been employed in the last twelve years. She did not release her medical records or comply with services including drug screens. As such, the totality of the evidence suggests that Mother was unable to care for Children. We find no clear error in the trial court's findings and judgment.

# Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

Crone, J., and Brown, J., concur.

---

been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*.