# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 25 2019, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

A.A.S. *(Minor Child)*

and

J.A.S. *(Father)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner,*

January 25, 2019

Court of Appeals Case No.
18A-JC-1831

Appeal from the Ohio Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
58C01-1804-JC-3

**Robb, Judge.**

# Case Summary and Issue

J.A.S. ("Father") appeals the juvenile court's finding that his daughter, A.S. ("Child") is a child in need of services ("CHINS"). Father raises one issue for our review, whether the juvenile court erred in finding Child to be a CHINS. Concluding the juvenile court did not err, we affirm.

# Facts and Procedural History

Child was born to Father and S.L.S. ("Mother") on April 20, 2012, and was six years old when these proceedings began. Father and Mother do not live together. During a three-day period between April 20 and 22, 2018, Child was staying with Father. On April 21, Father and Mother engaged in the following conversation through text message:

> [Father]: The next time [Child] poops her pants your [sic] going to spank her and spank her good. Got it.
>
> [Mother]: Yes . . . [b]ut you don't need to be spanking her so hard your [sic] leaving bruises either
>
> [Father]: Wouldn't have to if you would do your job
>
> [Mother]: I am
>
> [Father]: Then why she [sic] still doing it?
>
> [Mother]: Cause [sic] she's stubborn and doesn't want to

[Father]:    That's where the a** whooping comes in

Exhibit Volume I at 74-75.

[3]    Child returned to Mother's on April 22 and Mother noticed significant bruising on Child's buttocks and left leg as she was helping Child take a bath. Mother texted Father about spanking Child and Father responded, "it isn't a big deal" and "if [Child] wouldn't poop in her pants it wouldn't happen." Appellant's Appendix, Volume 2 at 14. Mother brought Child to the hospital.

[4]    Soon thereafter, the Indiana Department of Child Services ("DCS") received a report alleging that Father had physically abused Child. DCS Family Case Manager Lydia Stepp met Mother and Child at the hospital. Mother reported that Child had no bruising before going to Father's house three days before, and Stepp took four pictures of Child and her injuries.

[5]    DCS filed a CHINS petition on April 24. After several hearings in Father's absence, an initial hearing was held with respect to Father on May 22 and a fact-finding hearing was conducted on June 18. The juvenile court adjudicated Child to be a CHINS and made the following findings and conclusions:

> The Court now adjudicates the [Child] a Child in Need of Services as defined by [Indiana Code sections] 31-34-1-1 and 31-34-1-2.
>
> In support for this conclusion of law, the following findings of fact are found:

a.      [Father] is the biological father of [Child].

b.      [Child] was born on April 20, 2012, and is six (6) years of age.

c.      On April 22, 2018, [DCS] received a report alleging that [Father] had physically abused [Child].

* * *

g.      Family Case Manager Rebecca Eldridge (hereinafter "FCM Eldridge"), testified that she attempted to contact and notify [Father] of the court hearing set for April 25. FCM Eldridge stated that [Father] knew about the hearing, but chose not to appear. FCM Eldridge further testified that she had attempted to notify [Father] of all subsequent hearings, even going so far as to go to his home with law enforcement. FCM Eldridge knocked on [Father's] door, but no one answered, despite [Father's] vehicle being present.

h.      Mother admitted at the Initial Hearing held on April 25, 2018, that the allegations in the petition were true and that [Child] was a Child in Need of Services.

i.      FCM Eldridge learned that law enforcement was formally charging [Father] with domestic battery and neglect of a dependent resulting in serious bodily injury. . . .

j.      Father continued to fail to appear for subsequent hearings, until he was arrested and appeared at his Initial Hearing for his criminal case, at which time [DCS] informed him of his upcoming hearing date, on the record.

k.      Hospital records . . . indicate that [Child] was diagnosed with "contusion of lower back and pelvis" and that it was "suspected child maltreatment, confirmed". The records also indicate that [Child] suffered "significant bruising to full buttocks with some petechiae". The records further indicate that the bruising was cause [sic] by "non-accidental trauma". (Exhibit 3).

l.      FCM Eldridge testified that [Father] had spoken with her and indicated that he was willing to participate in services, but that he did not think that a Program of Informal Adjustment or a formal Child in Need of Services case was appropriate.

m.    FCM Eldridge further testified that [Father] indicated that [Child's] bruising could have been caused by anemia, as she was diagnosed with that when she was younger. Medical records from [Child's] primary physician indicate that [Child] does not have anemia. (Exhibit 4)

n.     FCM Eldridge also testified that [Father] had a previous substantiation with the [DCS] that was later overturned, but that case did not influence her decision in this case.

o.     Mother . . . testified that [Father] sent her text messages, in which [Father] admitted to spanking [Child] and leaving bruises. (Exhibit 5)

p.     Mother also testified that [Father] gave [Mother] several versions of how [Child] became injured, including [Child] having anemia, [Child] falling on his steel-toed boots in his home, and that [Child] may have the beginning stages of childhood leukemia.

q.   Father testified that [Child] received her injuries when she fell on his steel-toed boots and shoe horns that were inside his front door.  Father further testified that she seemed fine when she fell.  Father provided a picture of the inside of his front door, though it was not a picture from the day of the incident.  (Respondent's Exhibit A)

r.   Father admitted that he spanked [Child] because she lied about pooping in her pants.  He stated that he didn't notice any bruises on her bottom when he spanked her.

s.   Father has provided no probable explanation for how [Child] obtained her bruises.  He has provided theories, but openly admits that he spanked her and that there were no bruises on her bottom when did so.

t.   [DCS] has provided to the Court pictures of [Child's] injuries, as well as medical records which indicate that the bruises are the result of non-accidental trauma and child maltreatment.

u.   Based on the evidence and testimony, [DCS] has proved by a preponderance of the evidence that [Child] is a Child in Need of Services.

Order on Fact Finding Hearing at 1-4.  Father now appeals.

# Discussion and Decision

## I. Standard of Review

[6]   Father argues there is insufficient evidence supporting Child's CHINS adjudication.  DCS's burden of proof in a CHINS proceeding is a

preponderance of the evidence. Ind. Code § 31-34-12-3. "'Preponderance of the evidence,' when used with respect to determining whether or not one's burden of proof has been met, simply means the 'greater weight of the evidence.'" *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 361 (Ind. 1982) (citation omitted). We do not reweigh evidence or assess witness credibility for ourselves in reviewing a CHINS determination. *In re S.A.*, 15 N.E.3d 602, 607 (Ind. Ct. App. 2014), *aff'd on reh'g*, 27 N.E.3d 287 (Ind. Ct. App. 2015), *trans. denied*. Rather, we consider only the evidence in favor of the juvenile court's judgment, along with any reasonable inferences arising therefrom. *Id.*

[7]     In adjudicating Child a CHINS, the juvenile court entered findings of fact and conclusions thereon. We therefore review the juvenile court's judgment pursuant to Trial Rule 52(A): we first consider whether the evidence supports the factual findings and then consider whether those findings support the juvenile court's judgment. *Id.* We will not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when there are no facts in the record to support them; a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* Although we give substantial deference to the juvenile court's findings, we do not extend such deference to the court's conclusions. *Id.* Any issues not covered by the findings are reviewed under a general judgment standard and the judgment may be affirmed if it can be sustained on any basis supported by the evidence. *Id.*

# II. Adjudication as a CHINS

[8] As our supreme court explained in *In re KD*, 962 N.E.2d 1249 (Ind. 2012), there are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS:

> DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court.

*Id.* at 1253 (footnote omitted).

[9] Here, the juvenile court adjudicated Child a CHINS pursuant to Indiana Code section 31-34-1-2.[1] Order on Fact Finding Hearing at 1. Indiana Code section 31-34-1-2 provides, in relevant part:

> (a) A child is a [CHINS] if before the child becomes eighteen (18) years of age:

---

[1] The juvenile court also adjudicated Child to be CHINS pursuant to Indiana Code section 31-34-1-1. Because we conclude there is sufficient evidence to support the juvenile court's adjudication of the Child as CHINS pursuant to Indiana Code section 31-34-1-2, we need not also decide whether there was sufficient evidence to support the juvenile court's finding under Indiana Code section 31-34-1-1. *See Q.J. v. Indiana Dep't of Child Servs.,* 92 N.E.3d 1092, 1103, n.3 (Ind. Ct. App. 2018), *trans. denied*.

> (1) the child's physical or mental health is seriously
> endangered due to injury by the act or omission of the
> child's parent, guardian, or custodian; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without
>> the coercive intervention of the court.

[10] On appeal, Father argues DCS failed to produce sufficient evidence that Child's injury was the result of Father's act and that coercive intervention was necessary. Before proceeding to the merits of Father's argument, however, we note that Father does not challenge any of the juvenile court's specific findings. These unchallenged findings therefore stand as correct. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged trial court findings are accepted as true).

## A. Child's Injury was the Result of Father's Act

[11] First, Father argues "the record fails to demonstrate on a preponderance of the evidence that the bruising was in fact caused by Father's act." Corrected Appellant's Brief at 12. Specifically, Father contends that although he admitted to spanking Child, he "categorically denied spanking her with sufficient force to cause bruising." *Id*.

[12] Indiana Code section 31-34-12-4 states:

A rebuttable presumption is raised that the child is a [CHINS] because of an act or omission of the child's parent, guardian, or custodian if the state introduces competent evidence of probative value that:

> (1) the child has been injured;
>
> (2) at the time the child was injured, the parent, guardian, or custodian:
>
>> (A) had the care, custody, or control of the child; or
>>
>> (B) had legal responsibility for the care, custody, or control of the child;
>
> (3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and
>
> (4) there is a reasonable probability that the injury was not accidental.

Ind. Code § 31-34-12-4.

[13] "The purpose of the Presumption Statute is clear. In cases where a child has injuries that suggest neglect or abuse, it shifts the burden to the party most likely to have knowledge of the cause of the injuries—the parent, guardian, or custodian—to produce evidence rebutting the presumption that the child is a CHINS." *Indiana Dep't of Child Servs. v. J.D.*, 77 N.E.3d 801, 807 (Ind. Ct. App. 2017), *trans. denied*. Once DCS has produced evidence establishing the elements

of Indiana Code section 31-34-12-4, the burden of production shifts to the respondent. *Id*. at 809.

[14] Here, DCS produced hospital records and pictures detailing significant bruising to Child's buttocks and evidence that Child was in Father's care when the injuries occurred. Mother testified, and Father himself admitted, that Child had no signs of bruising when she arrived in Father's care. Such evidence shifted the burden of production to Father "to produce evidence rebutting the presumption that the child is a CHINS." *J.D.*, 77 N.E.3d at 807. As to Father's burden, the juvenile court found:

> Father has provided no probable explanation for how [Child] obtained her bruises. He has provided theories, but openly admits that he spanked her and that there were no bruises on her bottom when did so.

Order on Fact Finding Hearing at 4, ¶ s.

[15] We are mindful, of course, that corporal punishment remains legal in the State of Indiana. *See* Ind. Code § 31-34-1-15 ("This chapter does not . . . [l]imit the right of a parent . . . to use reasonable corporal punishment when disciplining [a] child."). However, such punishment must still be *reasonable,* and the extent of Child's injuries suggest otherwise. Therefore, in light of the evidence presented, Father's failure to rebut the presumption that Child was CHINS, and the juvenile court's unchallenged findings, we conclude Father has failed to demonstrate the juvenile court's judgment is clearly erroneous.

# B. Coercive Intervention was Necessary

[16] Next, Father argues there was insufficient evidence to demonstrate that coercive intervention was necessary. "The purposes of a CHINS case are to help families in crisis and to protect children, not punish parents." *Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017). And, in order for a child to be a CHINS, DCS must prove not only that one or the other of the parents suffers shortcomings, but also that the parents are unlikely to meet a child's needs absent coercive court intervention. *Id.*

[17] In support of his argument, Father relies on *In the Matter of E.K. v. Indiana Dep't of Child Servs.*, where we reversed a CHINS adjudication for insufficient evidence that coercive intervention was necessary. 83 N.E.3d 1256, 1261 (Ind. Ct. App. 2017), *trans. denied*. There, DCS's intervention was based upon one incident in which father spanked his child "too hard in an effort to cease an ongoing temper tantrum." *Id.* at 1262. There was no evidence that father had previously excessively disciplined the child and after the incident father fully cooperated with DCS, signed a safety plan which included a prohibition on corporal punishment, engaged with home-based counseling, underwent a psychological examination, and voluntarily participated in an online support group for persons with bipolar disorder. We find these facts distinguishable from those now before us.

[18] Here, the record demonstrates that Father's actions were the result of an ongoing pattern of parenting—not a single lapse of judgment. After all, DCS

had previous involvement with Father for the same reasons and despite completing discipline and potty training classes, Father continued to express a preference for spanking Child while encouraging Mother to do the same. *See Lang v. Starke County OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (noting that a court may consider a parent's response, or lack thereof, to services offered in the context of the termination of parental rights), *trans. denied.* Moreover, Father's potential for progress without coercive intervention seems particularly unlikely given the fact that he denies Child's injuries were the result of such discipline. Accordingly, we conclude DCS presented sufficient evidence to conclude coercive intervention was necessary.

# Conclusion

[19] For the reasons stated above, we conclude the juvenile court did not err in adjudicating Child to be a CHINS. We therefore affirm.

[20] Affirmed.

Riley, J., and Kirsch, J., concur.