# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT, T.L.

Don R. Hostetler
Indianapolis, Indiana

ATTORNEY FOR APPELLANT, J.L.

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of:
J.L. and Jo.L.,
Children in Need of Services;

T.L. (Father) and J.L. (Mother),

*Appellants-Respondents,*

v.

The Indiana Department of
Child Services,

*Appellee-Plaintiff*

and

February 28, 2019

Court of Appeals Case No.
18A-JC-1843

Appeal from the Marion Superior
Court

The Honorable Marilyn Moores,
Judge

Trial Court Cause Nos.
49D09-1711-JC-3663
49D09-1711-JC-3664



Child Advocates, Inc.

*Appellee-Guardian ad Litem*

**Pyle, Judge.**

# Statement of the Case

J.L. ("Mother") and T.L. ("Father") each appeal the trial court's order adjudicating J.L. and Jo.L. to be Children in Need of Services ("CHINS"). Both parents argue that there is insufficient evidence to support the adjudication. Concluding that the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the CHINS adjudication, we affirm the trial court.

We affirm.

# Issue

Whether there is sufficient evidence to support the CHINS adjudication.

## Facts

[1] The evidence most favorable to the CHINS adjudication reveals that Mother and Father are the parents of two daughters, J.L., who was born in April 2008, and Jo.L., who was born in September 2013. In December 2014, Father dragged Mother down the stairs, choked her, and repeatedly pushed her against the floor and the wall. In April 2015, Mother admitted that her daughters were CHINS because the family needed assistance in providing the children with a home free from domestic violence, and Father waived his right to a factfinding hearing. Thereafter, the trial court adjudicated both children to be CHINS. Mother completed domestic violence services and home-based therapy. Although Father completed no services, the "case was closed successfully in January of 2016." (Tr. at 110). At the time, Guardian Ad Litem Jill English-Cheatham was concerned that Father had not addressed the initial reason for the children's removal.

[2] In October 2017, Indianapolis Metropolitan Police Department officers were dispatched to Mother and Father's residence for a disturbance that involved Mother, Father, Mother's parents, ("Maternal Grandmother" and "Maternal Grandfather"), and Mother's brother ("Uncle"). Specifically, Mother had telephoned Maternal Grandmother, who had heard Mother and Father arguing before the phone went dead. Maternal Grandmother, Maternal Grandfather, and Uncle drove to Mother's home to check on her and the children. When they arrived at Mother's home, Mother's family heard Mother yelling, "get off of me." (Tr. 72). When the family went to the front door, Father opened it,

told the family that they were not welcome there, and grabbed Maternal Grandmother's arm. J.L., who was standing behind Father, told him to let go of her grandmother's arm.

[3] Maternal Grandmother entered the home and was attempting to calm down J.L, when Mother came downstairs. Mother appeared dazed and her lips were discolored. Maternal Grandfather called the police, and Maternal Grandmother suggested removing the children from the house. Father responded that no one was taking his children and held his hand on J.L. to prevent her from leaving. Uncle placed himself between Father and J.L. so that she could leave the house, and Father swung his arm at Uncle.

[4] When police officers arrived at the scene, Mother told one of the officers that Father had placed her in a bear hug, held her down, and squeezed her. J.L. and Jo.L. had witnessed the incident and were crying. Mother was also crying and told the patrolman that she was did not want Father to go to jail because she did not want DCS to remove her children.

[5] The children were removed from the home, and Father was charged with three counts of Level 6 felony domestic battery.[1] DCS filed a petition alleging that J.L. and Jo.L. were CHINS because Mother and Father had failed to provide their daughters with a "safe, stable, and appropriate living environment free from domestic violence." (Mother's App. at 42). The petition further alleged

---

[1] The State subsequently dismissed the three charges.

that Mother and Father had "an extensive history of domestic violence, and they were recently involved in a physical altercation in October 2017 in the presence of the children." (Mother's App. at 42).

[6] The trial court held a factfinding hearing on the CHINS petition ("CHINS hearing") in February 2018. The testimony at the hearing revealed that DCS Family Case Manager Emma Derheimer had initially been assigned to the case. However, shortly thereafter she had asked to be removed from the case because she felt that Father was aggressive and intimidating when she attempted to speak with him. DCS Family Case Manager Victor Benavides was assigned to the case in December 2017. He testified that he had recommended that both parents participate in domestic violence services. However, both parents refused his recommendation. Father testified that he had refused services because he had not touched his wife. According to Father, he was not "going to take something for something that [he] didn't do." (Tr. at 215). Mother denied that Father had ever been physically violent with her.

[7] Following the factfinding hearing, the trial court issued an order that provides in, relevant part, as follows:

> 39. [J.L.] and [Jo.L.] are children in need of services because their parents' continued domestic violence in their presence seriously endangers both their physical and mental conditions and the children need care and treatment which the children are not receiving and are unlikely to be provided without the coercive intervention of the Court.

(App. 158).

[8] Mother and Father each appeal the trial court's adjudication that their daughters are CHINS.

## Decision

[9] Both parents argue that there is insufficient evidence to support the CHINS adjudication. When determining whether there is sufficient evidence to support a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This Court will not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 1286.

[10] Where, as here, a juvenile court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id.* Findings are clearly erroneous when there are no facts or inferences in the evidence to support them. *Id.* A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id.*

[11] We further note that, as a general rule, appellate courts grant latitude and deference to trial courts in family law matters. *Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017). "This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their

testimony, as opposed to this court's only being able to review a cold transcript of the record." *Id.*

[12] As a preliminary matter, we note that neither parent challenges the trial court's findings. As a result, they have waived any argument relating to whether these unchallenged findings are clearly erroneous. *See McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings are accepted as true). We now turn to the substantive issue in this case.

[13] A CHINS proceeding is a civil action. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Therefore, DCS must prove by a preponderance of the evidence that the child is a CHINS as defined by the juvenile code. *Id*. INDIANA CODE § 31-34-1-1 provides that a child is a CHINS if, before the child becomes eighteen (18) years of age:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14] A CHINS adjudication focuses on the child's condition rather than the parent's culpability. *In re N.E.*, 919 N.E.2d at 105. The purpose of a CHINS

adjudication is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106. A CHINS adjudication in no way challenges the general competency of parents to continue relationships with their children. *Id.* at 105.

[15] We further note that it is well-settled that a child's exposure to domestic violence can support a CHINS adjudication. *In re D.P.*, 72 N.E.3d 976, 984 (Ind. Ct. App. 2017). Additionally, a single incident of domestic violence in a child's presence may support a CHINS finding. *Id.*

[16] Here, both parents argue that there is insufficient evidence to support the CHINS adjudication. Specifically, they contend that no domestic violence occurred. They further contend that even if Father hit Mother, there is no evidence that the assault occurred in the children's presence. However, our review of the testimony at the factfinding hearing reveals that Mother and Father have a history of domestic violence, and that one instance led to a CHINS adjudication in 2015. In addition, the evidence at the hearing also reveals that, in October 2017, Father physically assaulted Mother in the presence of the children, which resulted in this CHINS adjudication. Parents' arguments that no domestic violence occurred is an invitation for us to reweigh the evidence and reassess witness credibility. This we cannot and will not do. *In re S.D.*, 2 N.E.3d a 1286. There is sufficient evidence to support the CHINS

determination.[2]  The decision of the trial court is not clearly erroneous. See *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).

[17]    Affirmed.


Najam, J., and Altice, J., concur.

---

[2] Father's reliance on *In re S.D.*, 2 N.E.3d 1283 (Ind. 2014), is also misplaced.  There, the Indiana Supreme Court concluded that there was insufficient evidence that the final training that Mother needed to complete was unlikely to be provided or accepted without the coercive intervention of the court.  *Id.* at 1290.  The Supreme Court further explained that where that coercion is not necessary, the State may not intrude into a family's life and therefore reversed that trial court's judgment that S.D. was a CHINS.  *Id.* at 1291.  Here, however, Mother and Father both refused to participate in domestic violence services.  The coercive intervention of the court was therefore necessary.