## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2019, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle O. Sheff
Sheff Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of S.M and N.M. (Children in Need of Services): | July 22, 2019 |
| | Court of Appeals Case No. 19A-JC-262 |
| S.M. (Mother), | Appeal from the Marion Superior Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Mark A. Jones, Judge |
| The Indiana Department of Child Services, | The Honorable Beth Jansen, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause Nos. 49D15-1808-JC-2113 49D15-1808-JC-2114 |

**Bailey, Judge.**

# Case Summary

S.M. ("Mother") alleges there is insufficient evidence that two of her children—N.M., whose father is unknown, and (2) S.J.M., whose father is S.G. ("Father")—are Children in Need of Services ("CHINS").[1]  The CHINS adjudications were predicated upon findings that N.M. and S.J.M. (collectively, the "Children") (1) were seriously endangered because Mother and Father had not "successfully addressed . . . needs for domestic violence education" and (2) needed care they were not receiving—that is, care from parents "educated in domestic violence and co-parenting."  App. Vol. II at 106.  Because there was no evidence of recent violence between Mother and Father, and no evidence Mother and Father engaged in violence near or affecting the Children, we conclude the trial court clearly erred in adjudicating the Children CHINS.

We reverse.

# Facts and Procedural History

In August 2018, the Marion County Department of Child Services ("DCS") investigated allegations of neglect of S.J.M. (born in December 2014) and N.M. (born in November 2015).  DCS filed a petition alleging the Children were CHINS because—*inter alia*—they lacked "a safe, stable, and appropriate living environment free from domestic violence."  *Id.* at 41.  At an initial hearing, the

---

[1] Father does not actively participate in this appeal.

trial court ordered the Children would remain in parental care—*i.e.*, N.M. with Mother, and S.J.M. with Father as his primary physical custodian—if Mother and Father participated in services, including a domestic violence assessment.

[4]    At a fact-finding hearing in November 2018, there was evidence the instant CHINS matter arose after Mother and Father called the police on one another in August 2018.  Mother and Father testified the incident did not involve physical violence—that a dispute erupted after Mother took Father's credit card, believing Father had first taken her food stamp card.  S.J.M. was present during the incident.  When the police arrived, Father was arrested.  There was no evidence the arrest was based on a report of violence, and no charges were filed.  At the hearing, there was evidence DCS investigated the incident and had safety concerns that "domestic violence . . . was still taking place and there was a history of DV between" Mother and Father.  Tr. at 64.  DCS substantiated the allegations of neglect concerning the August 2018 incident due to "the history of . . . DV that had occurred in the home" between Mother and Father and because Mother "was refusing to cooperate with law enforcement."  *Id.*

[5]    At the hearing, Mother and Father admitted there had been violence between them.  When asked how many times, Father said two times.  Mother testified there were not more than ten physical altercations in eight years.  As to recency, Mother's therapist testified that Mother disclosed the date of the most recent violence.  The therapist said the date was documented, but the therapist could not recall it.  When Father was asked about the recency of violence, he said:

"That was years ago. I don't remember to be honest. I called the police on her." Tr. at 40. Father later testified that "it was a long time ago." *Id.* at 43.

[6] There was evidence that a prior CHINS matter was opened in 2015 arising from a physical altercation between Mother and Father's sister. Mother and Father were ordered to participate in services related to domestic violence. There was also evidence that a CHINS matter was opened in 2017. That matter was dismissed, with Father obtaining primary physical custody of S.J.M. With respect to violence, DCS elicited testimony that Mother had recently pleaded guilty to committing violent acts. Specifically, DCS asked if, in late 2017, Mother had been arrested and charged with battery resulting in bodily injury of a pregnant woman, criminal recklessness committed with a deadly weapon, domestic battery committed in the presence of a child less than 16 years old, and criminal confinement. Mother said she would not discuss that case and became argumentative, claiming she had been convicted of defending herself, "so don't portray me to be a threat when that's not what that is." *Id.* at 23. Mother eventually admitted that, in September 2018, she pleaded guilty to criminal recklessness and criminal confinement, and was on probation. There was no evidence that the Children were present during the underlying incident.

[7] DCS also elicited testimony that Mother and Father had engaged in recent arguments about co-parenting issues, including parenting time with S.J.M. There was testimony that Mother and Father would benefit from services related to domestic violence issues, including counseling to identify triggers. There was also testimony about ongoing safety concerns. A DCS family case

manager expressed concern that arguments between Mother and Father would escalate, *id.* at 76, and there would be a "continuance of the DV," *id.* at 84.

[8] Following the fact-finding hearing, the court adjudicated the Children CHINS and entered *sua sponte* findings and conclusions. Among the findings and conclusions was that Mother and Father "acknowledge DV history and a DV incident" in August 2018 at which S.J.M. was present. App. Vol. II at 103. The court also determined that Mother and Father "need education about the complexities of domestic violence and the toxic effects it has on children." *Id.* at 104. The court later held a hearing and entered a dispositional decree.[2]

[9] Mother now appeals.

# Discussion and Decision

[10] DCS must prove by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; *In re Eq.W.*, No. 18S-JC-603, 2019 WL 2635602, at *4 (Ind. June 27, 2019). Here, the order adjudicating the Children CHINS included findings and conclusions—but neither party requested special findings and "no statute expressly requires formal findings in a CHINS fact-finding order." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). The findings are therefore *sua sponte* findings controlling only the issues they cover, with a general

---

[2] Mother and DCS claim there are scrivener's errors in the dispositional decree, with Mother suggesting we remand for correction. In light of our disposition of this case, we need not do so.

judgment standard controlling any "issues or matters . . . not covered by such findings." Ind. Trial Rule 52(D). Where a general judgment standard applies, we will affirm if the judgment can be sustained on any legal theory supported by the evidence. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). As to matters covered by special findings, we will not "set aside the findings or judgment unless clearly erroneous." T.R. 52(A). Clear error is "that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We consider "whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). "A decision is clearly erroneous if the record facts do not support the findings or 'if [the court] applies the wrong legal standard to properly found facts.'" *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017) (quoting *Yanoff*, 688 N.E.2d at 1262). In conducting our review, "we do not reweigh evidence or judge witness credibility." *Id.* at 577-78. We give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A).

[11] DCS alleged the Children were CHINS under Indiana Code Section 31-34-1-1, which provides as follows:

> A child is a [CHINS] if before the child becomes eighteen (18) years of age:
>
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with

necessary food, clothing, shelter, medical care, education, or supervision:

> (A) when the parent, guardian, or custodian is financially able to do so; or

> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[12] In adjudicating the Children CHINS, the trial court determined the Children "are victims of neglect and are endangered in the care of their parents if services to address domestic violence and co-parenting issues are not successfully completed." App. Vol. II at 105-06. The court also determined that "after multiple incidents of domestic violence, arrests and pending criminal charges, multiple CHINS petitions filed, and a continuation of problematic co-parenting even on the day of trial, neither parent has successfully addressed their needs for domestic violence education . . . thereby seriously endangering the safety and well-being" of the Children. *Id.* at 106. The court further determined that the Children "need care and treatment, specifically parents who are educated in

domestic violence and co-parenting, that will not be provided or successfully completed without the coercive intervention of the court." *Id.*

[13] Mother challenges the sufficiency of evidence supporting the adjudications. Among her arguments is that DCS relied on "outdated information" and failed to demonstrate "a nexus between the outdated allegations of concerns about the parents' issues and any serious . . . endangerment" to the Children. Br. of Appellant at 24. Underlying each CHINS adjudication was a finding that Mother and Father "acknowledge DV history and a DV incident on August 21, 2018" at which S.J.M. "was present." App. Vol. II at 103.

[14] We are mindful that "a child's exposure to domestic violence can support a CHINS finding." *In re D.P.*, 72 N.E.3d 976, 984 (Ind. Ct. App. 2017) (quoting *K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015)). Indeed, "a single incident of domestic violence in a child's presence may support a CHINS finding, and it need not necessarily be repetitive." *Id.* Here, however, there was no evidence that the August 2018 incident involved any violence. When asked why DCS got involved, Mother testified that DCS "felt like [Father] and [Mother] had domestic issues again." Tr. at 14. The trial court followed up, asking Mother why she thought everyone was there today. Mother responded, "[b]ecause we supposedly have domestic issues." *Id.* at 15. She then began recounting what happened during the August 2018 incident— events she described as non-violent. When Father was asked why DCS was involved, Father said: "I believe . . . they got involved because they feel like me and [Mother], mainly me, is violent and you know around the kids and what

not.  I think that's why you guys stepped in."  Tr. at 40.  Father then gave his account of the incident, testifying that the matter did not escalate to violence.

[15]  Although there was evidence that Father was arrested because of the incident in August 2018 and that DCS decided to substantiate neglect allegations related to the incident, there is no evidentiary support for the finding that Mother and Father acknowledged the incident involved violence—and there is no evidence the incident involved any violence.  Moreover, although Mother and Father admitted their relationship at some point involved violence, there is no evidence concerning when the violence last occurred.  Indeed, pertinent information was seemingly available but a witness for DCS could not recall what Mother said.

[16]  "A CHINS finding should consider the family's condition not just when the case was filed, but also when it is heard."  *In re S.D.*, 2 N.E.3d at 1290.  At the fact-finding hearing, the uncontroverted evidence was that Mother and Father lived in separate residences and were no longer in a romantic relationship.  They interacted with one another as they co-parented S.J.M.—at times engaging in arguments—but there is no evidence any argument pertaining to S.J.M. erupted into violence.  Moreover, there is no evidence Mother and Father were violent with one another after their relationship ended or while living apart.  There is also no evidence that any prior violence between Mother and Father—or any violence at all—had occurred in front of the Children or otherwise affected the Children.  Indeed, although DCS sought to elicit testimony that Mother at one point faced a criminal charge for domestic battery in front of a child, Mother pleaded guilty to different charges and there was no

evidence about the details of the incident. *Cf. In re D.P.*, 72 N.E.3d at 984 ("Domestic violence is a very serious matter, but we cannot conclude that one arrest for that crime automatically makes the accused and alleged victim's child a CHINS without any evidence as to the details of the alleged incident.").

[17] Ultimately, there was ample evidence that Mother and Father had a strained relationship, and the court could reasonably conclude that improved communication and co-parenting skills would benefit Mother, Father, and the Children—particularly S.J.M., who was co-parented by Mother and Father. However, even if State intervention would yield substantial benefits to a family, the State may exercise its *parens patriae* power only as delineated by the legislature, thereby avoiding unwarranted intrusion into the private sphere of the family. *See In re S.D.*, 2 N.E.3d at 1287. Here, there was an absence of evidence that Mother and Father recently engaged in domestic violence, and there was an absence of evidence the Children were ever affected by any prior violent act. *Cf. In re S.M.*, 45 N.E.3d 1252, 1256 (Ind. Ct. App. 2015) ("A prior history—of substance abuse, or DCS contacts, or even crimes—in and of itself is not remotely sufficient to uphold a CHINS."). The trial court clearly erred in determining the Children were seriously endangered because Mother and Father purportedly needed education concerning domestic violence and co-parenting. Thus, the court clearly erred in adjudicating the Children CHINS.

[18] Reversed.

Riley, J., and Pyle, J., concur.