MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 13 2020, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin D. Roddye
Quinton M. White
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of Ki.H. (Minor Child), A Child in Need of Services; | May 13, 2020 |
| K.H. (Father), | Court of Appeals Case No. 19A-JC-2725 |
| *Appellant-Respondent,* | Appeal from the Monroe Circuit Court |
| v. | The Honorable Stephen R. Galvin, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 53C07-1906-JC-326 |
| *Appellee-Petitioner.* | |

**Pyle, Judge.**

# Statement of the Case

K.H. ("Father") appeals the trial court's order adjudicating his son, Ki.H. ("Ki.H."), to be a Child in Need of Services ("CHINS"). Father specifically argues that there is insufficient evidence to support the adjudication and that the trial court abused its discretion when it ordered him to: (1) complete a substance abuse assessment; (2) follow all recommendations in the assessment; and (3) submit to random drug and alcohol screens. Concluding that the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the CHINS adjudication and that the trial court did not abuse its discretion, we affirm the trial court's order.

We affirm.

# Issues

1. Whether there is sufficient evidence to support the CHINS adjudication.

2. Whether the trial court abused its discretion.

# Facts

The evidence most favorable to the CHINS adjudication reveals that Father and N.D. ("Mother") were married in 2013. Ki.H. was born in February 2018. In April 2018, Father threatened to kill Mother in front of Ki.H. when she told Father that she was going to file a dissolution petition. Mother filed the petition but dismissed it three weeks later. In April or May 2018, while Mother was still

on maternity leave, Father became angry and grabbed the back of Mother's hair while she was holding Ki.H. Mother filed a second dissolution petition in January 2019. The trial court appointed Guardian Ad Litem Melissa Richardson ("GAL Richardson") to the dissolution case in April 2019.

[4] In June 2019, during the pendency of the dissolution proceedings, Father picked up Ki.H. from Mother's home on a Saturday morning for weekend parenting time. When Mother picked up her sixteen-month-old son from Father the following Monday afternoon, Mother noticed that "something was off" with Ki.H. (Tr. Vol. 2 at 19). When Mother got into the back seat of her car with Ki.H., he put his head on her chest and would not let her put him in his car seat. Mother "just assumed he was tired and he missed [her], just from being gone all weekend. So, [she] just held him, and [she] said, you know, we'll stay here, we'll just, you know, mommy will hold you, just we'll stay here all day if [we] have to." (Tr. Vol. 2 at 19).

[5] While Mother was holding Ki.H., Father told her that he had noticed bruises on Ki.H.'s buttocks that morning. Father further told Mother that he had taken Ki.H. to a water park the previous day and that the bruises had probably been caused by a water slide. When Mother returned home and changed Ki.H.'s diaper, Mother noticed that Ki.H. had substantial bruising on his buttocks. Mother sent photos of the bruises to GAL Richardson, who told Mother to immediately seek medical attention for Ki.H.

Mother took Ki.H. to a clinic where he was examined by Dr. David Esarey ("Dr. Esarey"), a pediatrician with more than thirty years of experience. Dr. Esarey noticed multiple bruises on Ki.H.'s buttocks. The first bruise "r[an] across transversally covering both buttocks." (Tr. Vol. 2 at 53). Dr. Esarey also noticed a large more diffused bruise on Ki.H.'s left buttocks cheek, and another small bruise on the child's right buttocks cheek. The doctor did not believe the bruises could have been caused by a water slide. Rather, according to Dr. Esarey, "it would [have] take[n] a significant blow" to cause the bruises, which were "consistent with physical injury." (Tr. Vol. 2 at 50, 51). Dr. Esarey contacted DCS to report the bruises.

Shortly thereafter, DCS contacted Dr. Ralph Hicks ("Dr. Hicks"), a Riley Hospital pediatrician with more than thirty years of experience. Dr. Hicks, who has a subspecialty in child abuse pediatrics, reviews the records of possible child abuse victims pursuant to a collaborative effort between Riley Hospital and DCS. Dr. Hicks reviewed DCS' report, Dr. Esarey's report, and some digital photographs of Ki.H.'s buttocks. According to Dr. Hicks, the photographs were clear, and he was able to "appreciate the findings" when comparing the photographs to Dr. Esarey's report. (Tr. Vol. 2 at 65). In the photographs, Dr. Hicks noticed linear diffused bruises on Ki.H.'s buttocks. In Dr. Hicks' opinion, the linear marks revealed pattern bruising, which indicated an impact to Ki.H.'s buttocks by an object that had the same pattern. Dr. Hicks reported that he would not have expected to see this degree of bruising from a

water slide. Rather, Dr. Hicks opined that the bruises were consistent with "inflicted, non-accidental trauma." (Tr. Vol. 2 at 68).

[8] A few days later, DCS filed a petition alleging that Ki.H. was a CHINS. Doctors Esarey and Hicks both testified at the August 2019 CHINS hearing, and photographs of Ki.H.'s bruises were admitted into evidence. In addition, Mother testified that she and Father had a more than ten-year history of domestic violence. According to Mother, Father had previously slammed her head through the living room wall and against a counter, pushed her down the stairs, locked her in a bathroom for several hours, and choked her in front of her older son. Mother testified that police had been dispatched to her home at least six times for domestic violence incidents involving Father.

[9] Mother also described an incident that had occurred in March 2019 when Father was at Mother's home. According to Mother, Father found a soap dispenser with the letter "D" on it in Mother's bathroom. Father, who was holding thirteen-month-old Ki.H., began to shout male names beginning with "D." When Ki.H. tried to repeat the names, Father became extremely angry and told Ki.H., "if you say his name, I'll kill you and I'll kill her." (Tr. Vol. 2 at 17). Mother further testified that she had smelled marijuana on both Ki.H. and Father several times in 2019 when Father had returned Ki.H. from visits. According to Mother, when she confronted Father, he told her that he was not going to stop smoking marijuana. Mother had three recent protective orders issued against Father, one in 2018 and two in 2019. However, she had subsequently dismissed them all.

[10] GAL Richardson, who had been appointed to the CHINS case as well as the dissolution case, testified that Father had previously told her that he and his attorney had met with a doctor who had opined that Ki.H.'s bruises could have been cause by a water slide. According to GAL Richardson, she later learned that Father's statements were untrue.

[11] Father also testified at the hearing. He admitted that he had had sole care of Ki.H. during the weekend that the bruises had appeared; however, he denied spanking Ki.H. Rather, Father testified that the bruises on Ki.H.'s buttocks had resulted from a water park slide. Father further testified that Ki.H. had probably been "clinging to" Mother in the backseat of her car because he did not want to get into his car seat. (Tr. Vol. 2 at 178). In addition, Father denied that law enforcement had been called to six domestic violence incidents with Mother. Father also denied smoking marijuana in the presence of Ki.H. and explained that he had stopped smoking marijuana in March 2019 after his "first altercation with the DCS people." (Tr. Vol. 2 at 166).

[12] In October 2019, the trial court, which specifically did "not accept [Father's] testimony as accurate or truthful," (App. Vol. 2 at 21), issued an order adjudicating Ki.H. to be a CHINS pursuant to INDIANA CODE § 31-34-12-4. This statute sets forth a rebuttable presumption that a child is a CHINS if: (1) the child is injured; (2) the injury occurs while the child is in the care of his parent; (3) the injury would not ordinarily be sustained except for the parent's act or omission; and (4) there is a reasonable probability that the injury was not

accidental. Here, the trial court determined as follows in support of the adjudication:

> 22. Witnesses agree that there were no bruises on [Ki.H] when he began his visit with [Father]. [Father] admits that [Ki.H.] was always in his care throughout the weekend of June 15-17. No other individual supervised [Ki.H.]. Dr. Esarey and Dr. Hicks agree that the bruising to [Ki.H.] is inflicted trauma. [Father] has offered no substantial evidence to rebut the presumption that [Ki.H.] is a Child in Need of Services.

(App. Vol. 2 at 21).

[13] The trial court also concluded that, "[i]n light of the injuries to [Ki.H.], [Father]'s denial of responsibility, and [Mother]'s ongoing pattern of failing to protect herself and her children from [Father]'s acts of domestic violence, the coercive intervention of the court is clearly necessary to protect the health and safety of [Ki.H.]" (App. Vol. 2 at 21).

[14] At the late October 2019 dispositional hearing, Mother requested that the requirements that she submit to a substance abuse assessment and submit random drug screens be removed from the proposed dispositional decree. In support of her request, she pointed out "there [was] no indication [in the record] that substance abuse or alcohol use ha[d] been an issue [for her] in this matter." (Tr. Vol. 2 at 198). After discussing the matter with the parties, the trial court granted Mother's request. Thereafter, Father's counsel explained as follows to the trial court: "My client is insisting that I also request he also be relieved of all obligations number 19 and 20, the substance test, and undergo random

screening, he's tested clean ever since he's been screened since March. He's asking to be relieved of that, as [Mother] was as well." (Tr. Vol. 2 at 203-04). The trial court denied Father's request and issued a dispositional order that required Father to: (1) complete a substance abuse assessment; (2) follow all recommendations in the assessment; and (3) submit to random drug and alcohol screens.

[15] Father now appeals the trial court's adjudication that Ki.H. is a CHINS as well as the trial court's dispositional order.

# Decision

[16] Father contends that there is insufficient evidence to support the CHINS adjudication and that the trial court abused its discretion when it ordered him to: (1) complete a substance abuse assessment; (2) follow all recommendations in the assessment; and (3) submit to random drug and alcohol screens. We address each of his contentions in turn.

## 1. Sufficiency of the Evidence

[17] Father first argues that there is insufficient evidence to support the CHINS adjudication. A CHINS adjudication focuses on the child's condition rather than the parent's culpability. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The purpose of a CHINS adjudication is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106. A CHINS adjudication in no way challenges the general competency of parents to continue relationships with their children. *Id.* at 105. A CHINS proceeding is a civil action. *Id.*

Therefore, DCS must prove by a preponderance of the evidence that the child is a CHINS as defined by the juvenile code. *Id.*

[18] When determining whether there is sufficient evidence to support a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This Court will not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 1286. Where, as here, a juvenile court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id.* Findings are clearly erroneous when there are no facts or inferences to be drawn therefrom that support them. *Id.* A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id.* We further note that, as a general rule, appellate courts grant latitude and deference to trial courts in family law matters. *Matter of D.P.*, 72 N.E.3d 976, 980 (Ind. Ct. App. 2017). "This deference recognizes a trial court's unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record." *Id.*

[19] The Indiana Supreme Court has explained that INDIANA CODE §§ 31-34-1-1 through 31-34-1-11 specify the elements that DCS must prove in order to establish that a child is in need of services. *In re N.E.*, 919 N.E.2d at 105.

Specifically, DCS must prove that: (1) the child is under the age of eighteen; (2) one or more particular set or sets of circumstances set forth in the statute exists; and (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court. *Id.*

[20] For example, to establish that a child is a CHINS under INDIANA CODE § 31-34-1-1, DCS must prove the following set of circumstances: "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision[.]" *N.E.*, 919 N.E.2d at 105 (citing I.C § 31-34-1-1). This statute has been referred to as the "neglect statute." *In re D.F.*, 83 N.E.3d 789, 795 (Ind. Ct. App. 2017) (citing *In re Ju.L.*, 952 N.E.2d 771, 777 n.4 (Ind. Ct. App. 2011)).

[21] Similarly, under INDIANA CODE § 31-34-1-2, DSC must prove that "the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian[.]" This statute has been referred to as the "abuse statute." *In re D.F.*, 83 N.E.3d 789, 795 (Ind. Ct. App. 2017) (citing *In re Ju.L.*, 952 N.E.2d 771, 777 n.4 (Ind. Ct. App. 2011).

[22] Further, a third way that DCS can allege and prove that a child is a CHINS is pursuant to INDIANA CODE § 31-34-12-4, which provides in relevant part as follows:

A rebuttable presumption is raised that the child is a child in need of services because of an act or omission of the child's parent, guardian, or custodian if the state introduces competent evidence of probative value that:

(1) the child has been injured;

(2) at the time the child was injured, the parent, guardian, or custodian:

> (A) had the care, custody, or control of the child; or

> (B) had legal responsibility for the care, custody, or control of the child;

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

This statute has been referred to as the "presumption statute." *In re D.F.*, 83 N.E.3d at 795.

[23] In *Ind. Dep't of Child Servs. v J.D.*, 77 N.E.3d 801, 807 (Ind. Ct. App. 2017), *trans. denied*, this Court further explained the purpose of INDIANA CODE § 31-34-12-4 as follows:

> The purpose of the Presumption Statute is clear. In cases where a child has injuries that suggest neglect or abuse, it shifts the burden to the party most likely to have knowledge of the cause of the injuries – the parent, guardian, or custodian – to produce evidence rebutting the presumption that the child is a CHINS. The importance of the Presumption Statute is underscored in cases . . . where the injured child is too young to speak for himself.

[24] Here, DCS alleged that Ki.H. was a CHINS under all three statutes. The trial court based its adjudication on I.C. § 31-34-12-4, the presumption statute. Father argues that there is insufficient evidence to support the CHINS adjudication. Specifically, he first argues that the "rebuttable presumption found in I.C. § 31-34-12-4 must be read in conjunction with I.C. § 31-34-1-1 and -2[,]" which require a showing of serious endangerment or impairment. (Father's Br. 18). According to Father, "[t]here is no evidence in the record that [Ki.H.] was seriously endangered or impaired due to any action or inaction of Father. [K.H.] did have bruising on his buttocks, but there is no evidence suggesting that this bruising constitutes a serious impairment or seriously endangered [Ki.H.]" (Father's Br. 15).

[25] We disagree with Father's argument that we must apply either the neglect statute or the abuse statute in conjunction with the presumption statute. As the Indiana Supreme Court explained in *N.E.*, 919 N.E.2d at 102, in order to establish that a child is a CHINS, DCS must prove that a child is under the age of eighteen, a particular set of circumstances set forth in the statute exists, and the coercive intervention of the court is required. The three statues set forth above require proof of separate and distinct elements. Here, the trial court adjudicated Ki.H. to be a CHINS pursuant to INDIANA CODE § 31-34-12-4, the presumption statute. That statute requires DCS to prove that the child was injured; it does not require that the child was seriously endangered or impaired. *See e.g. D.F.,* 83 N.E.3d at 796 (finding sufficient evidence to support D.F.'s adjudication as a CHINS pursuant to INDIANA CODE § 31-34-12-4 where D.F.

was injured while in Mother's care, there was more than a reasonable probability that the injury was not accidental, and Mother failed to rebut the presumption that D.F. was a CHINS).

[26] To the extent that Father argues that there is insufficient evidence to support the CHINS adjudication pursuant to the presumption statute, we note that the record reveals that Ki.H. sustained bruises on his buttocks while in Father's care. Two pediatricians, each with more than thirty years of experience, testified that the bruises were caused by inflicted trauma, not by accident or a water slide. This evidence is sufficient to establish a rebuttable presumption that Ki.H. was a CHINS because of Father's act or omission. In addition, the evidence supports the trial court's conclusion that Father failed to rebut this presumption. Indeed, the trial court specifically stated that it did not believe Father's testimony. There is sufficient evidence to support the CHINS adjudication. *See id*.

[27] Father further argues that DCS "failed to prove that the coercive intervention of the court was necessary." (Father's Br. 21). However, our review of the evidence reveals that Father and Mother have a more than ten-year history of domestic violence, and police have been dispatched to their home at least six times in the past. In April 2018, when Mother told Father that she was filing a dissolution petition, Father threatened to kill her in front of Ki.H. In April or May 2018, Father became angry at Mother and grabbed the back of her hair while she was holding Ki.H. Then, in March 2019, Father became extremely angry while he was holding Ki.H. and threatened to kill not only Mother but

also Ki.H. A trial court need not wait until a tragedy occurs before intervening to protect a child. *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011). We find sufficient evidence to support the trial court's determination that the coercive intervention of the court was necessary to ensure Ki.H.'s safety.

## 2. Disposition

[28] Father also contends the trial court abused its discretion when it ordered him to: (1) complete a substance abuse assessment; (2) follow all recommendations in the assessment, and (3) submit to random drug and alcohol screens.

[29] Following the CHINS adjudication, the trial court conducts a dispositional hearing to consider the alternatives for the child's care, treatment, placement, or rehabilitation; the participation of the parent, guardian, or custodian; and the financial responsibility for the services provided. *In re K.D.,* 962 N.E.2d 1249, 1257 (Ind. 2012) (citing I.C. § 31-34-19-1).

[30] After the dispositional hearing, the trial court issues a dispositional order that sets forth the plan of care, treatment, or rehabilitation necessary to address the child's needs. *K.D.* at 1257. Although the trial court has broad discretion to determine programs and services in which a parent is required to participate, "the requirements must relate to some behavior or circumstances that was revealed by the evidence." *Id*. at 1258.

[31] Here, following the dispositional hearing, the trial court issued a dispositional order requiring Father to: (1) complete a substance abuse assessment; (2)

follow all recommendations in the assessment; and (3) submit to random drug and alcohol screens. Our review of the evidence most favorable to the CHINS adjudication reveals that Mother smelled marijuana on both Ki.H. and Father several times in 2019 following Ki.H.'s visits with Father. According to Mother, when she confronted Father, he told her that he was not going to stop smoking marijuana. Father's claim that he no longer smokes marijuana is nothing more than an invitation to reweigh the evidence, which we will not do. *See S.D.*, 2 N.E.3d at 1286. Because the requirements imposed on Father in the dispositional order relate to a behavior that was revealed by the evidence, we find no abuse of the trial court's discretion.

[32] Affirmed.

Bradford, C.J., and Baker, J., concur.